## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>RTIC Coolers, LLC; John Jacobsen; and James Jacobsen,<br><br>        Defendants. | **Civil Action No. 1:15-cv-00597-RP**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |

**(1)  TRADE DRESS AND TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**

**(2)  FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a);**

**(3)  TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**

**(4)  TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1);**

**(5)  COPYRIGHT INFRINGEMENT;**

**(6)  PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271;**

**(7)  TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;**

**(8)  COMMON LAW TRADE DRESS AND TRADEMARK INFRINGEMENT;**

**(9)  COMMON LAW UNFAIR COMPETITION;**

**(10)  COMMON LAW MISAPPROPRIATION; AND**

**(11)  UNJUST ENRICHMENT.**

**JURY TRIAL DEMANDED**

## YETI COOLERS, LLC'S SECOND AMENDED COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its second amended complaint against Defendants, RTIC Coolers, LLC ("RTIC"), John Jacobsen, and James Jacobsen, alleges as follows:

### The Parties

1.     YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 2000, Austin, TX, 78735.

2.     RTIC is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20220 Hempstead Road, Suite 22, Houston, TX, 77065.

3.     John Jacobsen and James ("Jim") Jacobsen (collectively "the Jacobsens") are the founders of RTIC, are the managers and owners of RTIC, are the central figures in RTIC (including both before and after RTIC was incorporated), and are actively involved in running and directing the business of RTIC.

4.     Upon information and belief, John Jacobsen resides at 14130 Sherburn Manor Drive, Cypress, TX, 77429.

5.     Upon information and belief, Jim Jacobsen resides at 3 Brywood Place, The Woodlands, TX, 77382.

### Jurisdiction and Venue

6.     This is an action for trade dress and trademark infringement, unfair competition and false designation of origin, false advertising, trade dress dilution, copyright infringement, patent infringement, misappropriation, and unjust enrichment.  This action arises under the Trademark Act (also referred to as the Lanham Act), 15 U.S.C. § 1051, *et seq.*; the Copyright Act,

17 U.S.C. § 101 *et seq.*; the Patent Act, 35 U.S.C. § 1, *et seq.*; the Texas Business & Commerce Code; and federal and state common law, including the law of the State of Texas.

7.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

8.      This Court has personal jurisdiction over RTIC and the Jacobsens because, *inter alia*, RTIC is incorporated in the State of Texas, RTIC has its principal place of business in the State of Texas, and RTIC and the Jacobsens have done and are doing business in the State of Texas, including in this District.  For example, and as discussed in more detail below, RTIC and the Jacobsens have advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute infringing products to customers and potential customers, and on information and belief, RTIC's and the Jacobsens' tortious acts giving rise to this lawsuit are occurring in the State of Texas, including in this District, and RTIC's and the Jacobsens' customers and potential customers reside in the State of Texas, including in this District.  The Jacobsens also reside in the State of Texas.

9.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) & (c).

**YETI's Business and Intellectual Property**

10.     For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty coolers.  YETI created unique, distinctive, and non-functional designs to use with YETI's coolers.  YETI has extensively and continuously promoted and used these designs for years in the United States.  Through that extensive and continuous use, YETI's designs have become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trademark

and trade dress rights relating to the source-identifying features of its cooler designs, and has obtained copyright registrations for certain images of its cooler products.  YETI also owns United States patents related to its coolers.

11.     In about 2008, YETI introduced its "Roadie®" and "Tundra®" coolers into the marketplace.

12.     As a result of YETI's considerable investments and efforts, the Roadie® and Tundra® coolers are designed and built to provide extreme insulating capabilities and exceptional durability.  YETI has invested substantial resources in the design, development, manufacture, and marketing of its coolers.

13.     YETI has sold more than 400,000 Roadie® and more than 1,000,000 Tundra® coolers throughout the United States, including sales to customers in the State of Texas.  YETI has expended significant resources advertising and marketing its Roadie® and Tundra® coolers. The design and features of YETI's Roadie® and Tundra® coolers have received widespread and unsolicited public attention.  For example, the Roadie® and Tundra® coolers have been featured in numerous newspaper, magazine, and Internet articles directed to outdoor enthusiasts.

14.     Because of YETI's use and promotion of the trademarks "YETI," "ROADIE," and "TUNDRA" throughout the United States in connection with cooler products, consumers have come to associate "YETI," "ROADIE," and "TUNDRA" as a source identifier of YETI, and YETI owns trademark rights in these marks.

15.     For example, YETI owns several trademark registrations, including Trademark Registration No. 3,203,869 ("the '869 registration") for "YETI" for portable coolers and Trademark Registration No. 4,083,932 ("the '932 registration") for "ROADIE" for portable coolers.  A copy of the '869 registration is attached as Exhibit 1, and a copy of the '932

registration is attached as Exhibit 2.[1]

16.      The designs of the Roadie® and Tundra® coolers have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI.  As a result of at least YETI's continuous and exclusive use of the designs of the Roadie® and Tundra® coolers, YETI's marketing, advertising, and sales of the coolers, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers, which consumers have come to uniquely associate with YETI.

17.      Illustrations 1 and 2 below show exemplary YETI Roadie® and Tundra® coolers.

**Illustration 1:  Exemplary Image of a YETI Roadie® Cooler.**



---

[1] YETI also owns Trademark Registration No. 4,083,930 for "TUNDRA" for portable coolers.



**Illustration 2:  Exemplary Images of a YETI Tundra® 45 Cooler and a YETI Tundra® 65 Cooler.**

**YETI Tundra® 45 Cooler**

**YETI Tundra® 65 Cooler**

18.     YETI's trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers include, but are not limited to, the visual flow of the Tundra® and Roadie® coolers, the curves and lines in the Tundra® and Roadie® coolers, the design, style, and

appearance of these curves and lines in the Tundra® and Roadie® coolers, the visual connection and relationship between one or more of the curves and lines in the Tundra® and Roadie® coolers, and the style, design, and appearance of one or more design aspects of the Tundra® and Roadie® coolers, including but not limited to the design and appearance of the style line on the front of the cooler; the design and appearance of the style line on the back of the cooler; the design and appearance of the style line on each side of the cooler; the design and appearance of the "duck-bill" tapered front corners of the cooler; the design and appearance of the inverted style line above the name plate and below the lid; the design and appearance of the ledge around the perimeter of the cooler; the design and appearance of the rope handles; the design and appearance of the front, side and rear design of the feet of the cooler; the placement, design and appearance of the slots on the side, front and rear of the cooler; the design and appearance of the latches; the design and appearance of the name plate and name plate lettering; the placement, design, and appearance of the name plate on the front between the two front style lines; and the color contrast, color combinations, and shapes of features of the cooler, whether these design features are alone or in any combination with each other, including the overall look and appearance of the Roadie® and Tundra® coolers.

19.    As a result of YETI's exclusive, continuous and substantial use, advertising, and sales of cooler products bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of YETI.

20.    YETI also owns copyright registrations for certain photographs of its Roadie® and Tundra® coolers.  Copies of (i) the Certificates of Registration and (ii) the Deposits as filed with

the U.S. Copyright Office are attached as Exhibits 3-10 for each registration as set forth in the table below.

| Exhibit | Registration No. | Title |
|---|---|---|
| 3 | VA0001983503 | YETI Roadie – Front, Handle Up |
| 4 | VA0001983530 | YETI Roadie – Front, Handle Down |
| 5 | VA0001983649 | YETI Roadie – Perspective, Handle Up |
| 6 | VA0001983505 | YETI Roadie – Perspective, Handle Down |
| 7 | VA0001983504 | YETI Roadie – Perspective, Top Open |
| 8 | VA0001983502 | YETI Tundra – Front |
| 9 | VA0001983656 | YETI Tundra – Perspective, Top Down |
| 10 | VA0001983652 | YETI Tundra – Perspective, Top Open |

21.     In addition to its trademark, trade dress, and copyright rights, YETI also owns United States patents related to its coolers, including U.S. Patent No. 8,910,819 ("the '819 patent") and U.S. Patent No. 9,187,232 ("the '232 patent").   The '819 patent is entitled "Insulating Container and Latching Mechanism."   On December 16, 2014, the '819 patent was duly and legally issued by the U.S. Patent Office to Roy Joseph Seiders, who assigned to YETI the entire right, title, and interest to the '819 patent, including all rights to recover for all infringements thereof.  A copy of the '819 patent is attached as Exhibit 11.

22.     The '232 patent is entitled "Insulating Container and Latching Mechanism."   On November 17, 2015, the '232 patent was duly and legally issued by the U.S. Patent Office to Roy Joseph Seiders, who assigned to YETI the entire right, title, and interest to the '232 patent, including all rights to recover for all infringements thereof.  A copy of the '232 patent is attached as Exhibit 12.

**RTIC's and the Jacobsens' Unfair and Unlawful Actions**

23.     RTIC and the Jacobsens have purposefully advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute, coolers that infringe on YETI's rights, including the rights protected by YETI's intellectual

property.  On information and belief, RTIC and the Jacobsens are also making such infringing products and/or importing such infringing products into the United States.  RTIC's and the Jacobsens' infringing products are in the same sizes as YETI's own products, and they are confusingly similar imitations of YETI's own products.  RTIC's and the Jacobsens' actions have all been without the authorization of YETI.

24.    The Jacobsens are responsible for overseeing all aspects of RTIC's infringing cooler products, including design, advertising, marketing, and sales.

25.    The Jacobsens personally participated in the design of RTIC's infringing products, including authorizing, directing, and approving the design of RTIC's infringing products.

26.    The Jacobsens have personally promoted, offered for sale, and sold the infringing products.    *See, e.g.,*  https://www.youtube.com/watch?v=pmNGRYKR-BI  and  Exhibit  13 (containing a screenshot of the YouTube video).

27.     RTIC and the Jacobsens currently advertise, promote, offer for sale, sell, and distribute at least three infringing cooler products, namely the RTIC 20, RTIC 45, and RTIC 65. A screen shot from RTIC's website that shows these three infringing products is set forth below as Illustration 3.  RTIC's website is www.rticcoolers.com.  A printout of this website from July 15, 2015 is attached as Exhibit 14, and a printout of this website from January 5, 2016 is attached as Exhibit 15. The Jacobsens personally participated in the design of these three infringing cooler products, including authorizing, directing, and approving the design of these three infringing cooler products.  The Jacobsens also personally authorized, directed, and approved RTIC's website, in which RTIC, *inter alia*, advertises, promotes, offers to sell, and sells these three infringing cooler products.

**Illustration 3:  Screen Shot from RTIC's Website.**



28.     At least as early as July of 2015, customers could order the infringing RTIC 20, RTIC 45, and RTIC 65 cooler products from RTIC, at least through its website, and the coolers would ship to customers the next month (in August of 2015).  When ordered through RTIC's website, a customer could choose the specific cooler (RTIC 20, RTIC 45, and RTIC 65), the quantity (between 1 and 10 coolers), and the color (white, tan, blue, green, pink, and brown).  A screen shot from RTIC's website, captured July 15, 2015, that shows how a customer could order a cooler is set forth below as Illustration 4.  In this particular example, the customer would have been ordering one RTIC 20 cooler in white.



Illustration 4:  Screen Shot from RTIC's Website.

29.     As of January 5, 2016, customers could order the infringing RTIC 20, RTIC 45, and RTIC 65 cooler products from RTIC, at least through its website.  According to a January 1, 2016 update on RTIC's website, RTIC began shipping coolers on September 30, 2015, and RTIC has shipped "thousands of coolers" since that date.  A screen shot from RTIC's website that provides an update as to the inventory and shipping timeline of RTIC's infringing cooler products is set forth below in Illustration 5.

**Illustration 5:  Screen Shot from RTIC's Website.**



30.     As of January 5, 2016, when ordered through RTIC's website, a customer could choose the specific cooler (RTIC 20, RTIC 45, and RTIC 65), the quantity, and the color (artic white or mojave tan).  A screen shot from RTIC's website that shows how a customer can order a cooler is set forth below as Illustration 6.  In this particular example, the customer would be ordering one RTIC 20 cooler in white.

**Illustration 6:  Screen Shot from RTIC's Website.**



31.     RTIC's website repeatedly compares its coolers to YETI's coolers.   A screen shot from RTIC's website, captured July 15, 2015, that shows an example of a direct comparison between RTIC's infringing cooler products and YETI's cooler products is set forth below in Illustration 7.



**Illustration 7:  Screen Shot from RTIC's Website.**

32.     A screen shot from RTIC's website, captured January 5, 2016, that shows another example of a direct comparison between RTIC's infringing cooler products and YETI's cooler products is forth below in Illustration 8.

14



Illustration 8:  Screen Shot from RTIC's Website.

33.     RTIC and the Jacobsens have not been shy about unlawfully copying YETI's coolers.  For example, RTIC and the Jacobsens stated in a June 22, 2015 Facebook post that RTIC is "able to offer high quality coolers *that have all of the features of the YETI® Coolers* plus more."  (Ex. 16, p. 85) (emphasis added).  Upon information and belief, the Jacobsens personally authorized, directed, and approved such Facebook posts touting RTIC's copying of YETI's coolers.

34.     The infringing products on RTIC's website are not the first infringements by RTIC and the Jacobsens of YETI's intellectual property rights.  In 2014, and prior to RTIC's existence as a limited liability company, the Jacobsens were using the website www.rticcoolers.net to, *inter alia*, advertise, promote, offer for sale, sell, and distribute infringing products, including the RTIC 20 and the RTIC 45 cooler products.   The Jacobsens personally authorized, directed, and

approved this website for advertising, promoting, and selling such infringing products.  Printouts from this website are attached as Exhibits 17-19.

35.     At least through this prior website, RTIC and the Jacobsens were using altered images of YETI's coolers and passing them off as RTIC's coolers.  For example, RTIC and the Jacobsens took digital photographs of YETI's coolers, removed the "YETI" trademark from the images, replaced that trademark with the RTIC name, and then used these altered images to, *inter alia*, advertise, promote, offer for sale, sell, and distribute RTIC coolers.  The Jacobsens personally participated in, authorized, directed, and approved the strategy of using altered images of YETI's coolers and passing them off as RTIC's coolers.  These photographs are protected by YETI's copyright registrations discussed above.  Examples of RTIC's altered images are shown in Illustration 9 below, and are taken from Exhibits 17 and 18.

**Illustration 9:  Screen Shots from RTIC Website, www.rticcoolers.net**



36.    RTIC and the Jacobsens also used YETI's trademarks in, *inter alia*, advertising, promoting, offering for sale, selling, and distributing RTIC's coolers.  For example, as seen at the top of the printouts of RTIC's website that are attached as Exhibits 17-19, RTIC and the Jacobsens used "YETI" and "ROADIE" to describe RTIC's web pages.   The Jacobsens personally participated in, authorized, directed, and approved the strategy of using YETI's trademarks in, *inter alia*, advertising, promoting, offering for sale, selling, and distributing RTIC's coolers.

37.    RTIC and the Jacobsens further disregarded YETI's rights and continued to unlawfully copy YETI's coolers.  A screen shot from September 2014 of RTIC's website is set forth below as Illustration 10.

**Illustration 10:  Screen Shot from RTIC's Website in September 2014.**



38.     RTIC and the Jacobsens used a third-party, 99designs, to assist in designing at least the banner advertisement for RTIC's website.

39.     John Jacobsen, who, *inter alia*, registered, participated in, and directed the design of the website, described the project for designing the banner advertisement for RTIC's website on 99designs' website.  Attached as Exhibit 20 is a printout from 99designs' website that includes comments from John Jacobsen.  He states that the banner advertisement "should look more like the yeticooler.com design," and that he wanted the picture of the cooler "to look natural and not

photo shopped."  On information and belief, the coolers that are shown in the multiple banner advertisements in Exhibit 20, including the "winning design," are digital images of YETI's coolers where the Jacobsens removed the "YETI" trademark from the images and replaced it with the RTIC name.

40.    As a result of RTIC's and the Jacobsens' unlawful activities, counsel for YETI sent a letter to RTIC dated September 5, 2014 that, *inter alia*, informed RTIC of YETI's rights, including its intellectual property rights, notified RTIC that RTIC was infringing on YETI's rights, and demanded that RTIC stop infringing.

41.    On September 16, 2014, Jim Jacobsen responded to YETI's letter and stated:

> • We have not manufactured any RTIC coolers as of the date of this letter;
> • We have not sold and shipped RTIC coolers as of the date of this letter; and
> • Rtic Cooler websites were taken offline prior to receipt of your letter.

(Ex. 21).

42.    On September 19, 2014, counsel for YETI and RTIC, along with the Jacobsens, spoke about RTIC's various infringements.  During the call, the Jacobsens again represented that RTIC was not selling the coolers identified in YETI's letter and that no such coolers had been manufactured.

43.    RTIC's and the Jacobsens' representations were, however, directly contradicted by the information that they were providing to consumers and potential consumers.  For example, RTIC's website at the time stated "Free Shipping on All Orders," "Delivered 1-2 Days," "No Sales Tax in Most States," "Ships Today if Ordered By 6PM," and included an online order form, a "view cart" option, and a telephone number.  (Exs. 17-19).

44.    RTIC's website also included at least the following testimonials set forth in Illustration 11 reflecting that RTIC had sold infringing cooler products.  (Exs. 17 and 18).

---

**Illustration 11:  Testimonials from RTIC's Website from July and August 2014.**

**1.  GREAT COOLER AND HALF THE PRICE OF A YETI** ☐☐☐☐☐

> THIS RTIC 20 IS VERY MUCH JUST AS GOOD IF NOT BETTER THAN THE YETI ROADIE 20 BUT COST HALF AS MUCH. I SEARCHED THE WEB AND FOUND THIS PRODUCT. I LIKE I WAS ABLE TO ORDER ONLINE AND GET THE PRODUCT THE VERY NEXT DAY. I TOOK IT TO THE SOCCER GAME AND EVERYONE WAS ASKING ABOUT THIS COOLER.
> — *STEVEN J.* ON 1ST JUL 2014

**2.  EXCELLENT PRODUCT!** ☐☐☐☐☐

> THIS COOLER WAS A DREAM WHEN I TOOK IT CAMPING.
> — *DAVE* ON 1ST JUL 2014

**1.  AWESOME COOLER. BETTER PRICE & DELIVERED NEXT DAY TO MY FRONT DOOR!** ☐☐☐☐☐

> LOVE IT. HAVE WANTED A YETI FOR YEARS BUT COULD NOT BRING MYSELF TO SPEND THAT MUCH. NOW I FOUND ONE THAT IS BETTER AND I AM SO PLEASED I WAITED. THE ICE LASTED ALL NIGHT AND THE BEER LASTED TWO HOURS!
> — *BILL J.* ON 24TH AUG 2014

---

45.    Subsequently, on October 10, 2014, John Jacobsen wrote a letter to counsel for YETI.  In this October 10 letter, John Jacobsen again represented that RTIC had not sold, shipped, or had made any of the coolers that YETI had identified to RTIC.  John Jacobsen also stated that "[w]e do not intend to infringe on Yeti's protectable intellectual property rights."

46.     Despite RTIC's promises, RTIC is once again advertising and offering to sell coolers, and making coolers and/or importing coolers into the United States, that infringe on YETI's rights.  The Jacobsens are and have been the principal decision makers involving the design, promotion, advertising, offer for sale, and sale of RTIC's infringing  cooler products, and they have approved and authorized RTIC's actions.

47.     YETI refers to all of RTIC's infringing coolers as "the Infringing Products."

48.     YETI used its trade dress extensively and continuously before RTIC and the Jacobsens began advertising, promoting, selling, offering to sell, or distributing the Infringing Products.  Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas before RTIC and the Jacobsens commenced their unlawful use of YETI's trade dress.

49.     As a result of RTIC's and the Jacobsens' activities related to the Infringing Products, there is a strong likelihood of confusion between RTIC and its products on the one hand, and YETI and its products on the other hand, and there is already evidence of such confusion.  As discussed in more detail below, RTIC's and the Jacobsens' actions are unfair and unlawful.

## Count I: Trade Dress and Trademark Infringement
## Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

50.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     Based on the activities described above, including, for example, RTIC's and the Jacobsens' advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, and RTIC and the Jacobsens

using at least YETI's "YETI" and "ROADIE" trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens have infringed and continue to infringe YETI's trade dress and trademarks under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof, and RTIC's and the Jacobsens' use of YETI's trademarks, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of RTIC with YETI and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, and/or otherwise associated with YETI.

52.   YETI's trade dress is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used its trade dress for years in the United States. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before RTIC and the Jacobsens commenced their unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

53.   RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

54.     On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has been intentional, willful, and malicious.  RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' direct copying of YETI's trademarks in an effort to sell their own cooler products, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

55.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least RTIC's and the Jacobsens' profits, YETI's actual damages, enhanced damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ § 1125(a), 1116, and 1117.

### Count II: Unfair Competition and False Designation of Origin
### Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

56.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

57.     Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, and RTIC and the Jacobsens using at least YETI's "YETI" and "ROADIE" trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens, in direct competition with YETI, have engaged and continue to engage in unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  RTIC and the Jacobsens have obtained an unfair advantage as compared to YETI through RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof

and RTIC's and the Jacobsens' use of YETI's trademarks to falsely designate the origin, affiliation, and/or sponsorship of RTIC and of the Infringing Products.

58.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress for years in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before RTIC commenced its unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

59.     RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

60.     On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has been intentional, willful, and malicious.  RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' direct copying of YETI's trademarks in an effort to sell their own cooler products, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

61.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's and the Jacobsens' profits, YETI's actual damages, enhanced damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ § 1125(a), 1116, and 1117.

**Count III: False Advertising Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

62.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

63.     Based on the activities described above, including, for example, RTIC and the Jacobsens advertising and offering for sale the Infringing Products, and making false statements and representations when doing so, including that YETI's cooler products were RTIC's cooler products, that RTIC's cooler products could be ordered in September 2014, and that certain customers (as reflected in at least the customer testimonials) had ordered RTIC's cooler products, RTIC and the Jacobsens have engaged in false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  RTIC and the Jacobsens engaged in commercial advertising and promotion and misrepresented at least the nature and characteristics of their goods and commercial activities.

64.     RTIC's and the Jacobsens' actions have caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI and its cooler products.

65.     On information and belief, RTIC's and the Jacobsens' false advertising has been intentional, willful, and malicious.  RTIC's and the Jacobsens' bad faith is evidenced at least by RTIC and the Jacobsens representing that YETI's cooler products were RTIC's cooler products and RTIC and the Jacobsens representing to YETI in September 2014 that RTIC had not made or

sold coolers, when its website had customer testimonials from July and August 2014 reflecting that customers had purchased coolers.

66.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least RTIC's and the Jacobsens' profits, YETI's actual damages, enhanced damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count IV: Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

67.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

68.     Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, RTIC and the Jacobsens have diluted and continues to dilute YETI's trade dress under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

69.     YETI's trade dress is famous and is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade dress for years in the United States.  Through that extensive and continuous use,

YETI's trade dress has become a famous, well-known indicator of the origin and quality of YETI's cooler products throughout the United States and is widely recognized by the general consuming public as a designation of the source of YETI's cooler products. YETI's trade dress also has acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress became famous and acquired this secondary meaning before RTIC and the Jacobsens commenced their use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

70. RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

71. On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

72. YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's and the Jacobsens' profits, actual damages, enhanced profits and damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count V: Trademark Infringement Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

73.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

74.     Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and RTIC and the Jacobsens using at least YETI's "YETI" and "ROADIE" federally registered trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens have infringed YETI's trademarks under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).   RTIC's and the Jacobsens' use of "YETI" and "ROADIE" is likely to cause confusion, or to cause mistake, or to deceive.

75.     RTIC's and the Jacobsens' use of "YETI" and "ROADIE" has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's cooler products.

76.     On information and belief, RTIC's and the Jacobsens' use of "YETI" and "ROADIE" has been intentional, willful, and malicious.   RTIC's and the Jacobsens' bad faith is evidenced at least by their direct copying of YETI's trademarks in an effort to sell their own cooler products.

77.      YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's and the Jacobsens' profits, actual damages, enhanced profits and damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.

**Count VI: Copyright Infringement of the Photographs of YETI's Roadie® Cooler**

78.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

79.     Based on the activities described above, including, for example, RTIC and the Jacobsens copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of YETI's photographs of its Roadie® Cooler—and doing so to help RTIC and the Jacobsens advertise, promote, offer for sale, sell, and distribute the Infringing Products— RTIC and the Jacobsens have infringed YETI's copyrights in the photographs of YETI's Roadie® cooler in violation of at least 17 U.S.C. §§ 102, 106, and 501.

80.     RTIC's and the Jacobsens' acts of infringement are willful.  RTIC's and the Jacobsens' bad faith is evidenced at least by RTIC's and the Jacobsens' direct copying of photographs of YETI's coolers, RTIC and the Jacobsens removing the "YETI" trademark from the images, RTIC and the Jacobsens replacing that trademark with the RTIC name, and RTIC and the Jacobsens then using these altered images to, *inter alia*, advertise, promote, offer for sale, sell, and distribute RTIC coolers.

81.     Each infringement by RTIC and the Jacobsens of YETI's copyrighted works in the photographs of YETI's Roadie® cooler constitutes a separate and distinct act of infringement.

82.     RTIC and the Jacobsens have also committed "criminal infringement" by willfully infringing YETI's copyrights in the photographs of YETI's Roadie® cooler for purposes of commercial advantage or private financial gain in violation of 17 U.S.C. § 506(a)(1).

83.     RTIC's and the Jacobsens' infringement of YETI's copyrights has caused irreparable injury to YETI.

84.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's actual damages and/or RTIC's and the Jacobsens' profits under 17 U.S.C. § 504(b), and costs at least under 17 U.S.C. § 505.

**Count VII: Copyright Infringement of the Photographs of YETI's Tundra® Cooler**

85.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

86.     Based on the activities described above, including, for example, RTIC and the Jacobsens copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of YETI's photographs of its Tundra® Cooler—and doing so to help RTIC and the Jacobsens advertise, promote, offer for sale, sell, and distribute the Infringing Products— RTIC and the Jacobsens have infringed YETI's copyrights in the photographs of YETI's Tundra® cooler in violation of at least 17 U.S.C. §§ 102, 106, and 501.

87.     RTIC's and the Jacobsens' acts of infringement are willful.  RTIC's and the Jacobsens' bad faith is evidenced at least by RTIC's and the Jacobsens' direct copying of photographs of YETI's coolers, RTIC and the Jacobsens removing the "YETI" trademark from the images, RTIC and the Jacobsens' replacing that trademark with the RTIC name, and RTIC and the Jacobsens then using these altered images to, *inter alia*, advertise, promote, offer for sale, sell, and distribute RTIC coolers.

88.     Each infringement by RTIC and the Jacobsens of YETI's copyrighted works in the photographs of YETI's Tundra® cooler constitutes a separate and distinct act of infringement.

89.     RTIC and the Jacobsens have also committed "criminal infringement" by willfully infringing YETI's copyrights in the photographs of YETI's Tundra® cooler for purposes of commercial advantage or private financial gain in violation of 17 U.S.C. § 506(a)(1).

90.     RTIC's and the Jacobsens' infringement of YETI's copyrights has caused irreparable injury to YETI.

91.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's actual damages and/or RTIC's and the Jacobsens' profits under 17 U.S.C. § 504(b), and costs at least under 17 U.S.C. § 505.

### Count VIII: Patent Infringement of U.S. Patent 8,910,819 Under 35 U.S.C. § 271

92.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

93.     RTIC and the Jacobsens have infringed and continue to infringe the '819 patent at least by using, selling, and offering to sell the Infringing Products, and on information and belief by making the Infringing Products and/or importing them into the United States, which are covered by one or more claims of the '819 patent.

94.     The Jacobsens have actively induced infringement, and continue to actively induce infringement, of the '819 patent by assisting, overseeing, directing, and personally participating in the design, marketing, advertising, and sales of RTIC's Infringing Products.

95.     RTIC's and the Jacobsens' acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

96.     YETI provided notice to RTIC and the Jacobsens of YETI having patent rights protecting its coolers at least as early as September 5, 2014 when YETI's counsel wrote to RTIC.

97.     Jim Jacobsen also found the application that led to the '819 patent in or around June 2014, well before this lawsuit was filed.  On information and belief, RTIC's and the Jacobsens' infringement was done with knowledge of the '819 patent.

98.     On information and belief, RTIC's and the Jacobsens' infringement of the '819 patent has been and is in willful disregard of the '819 patent and the rights created thereunder, as evidenced at least by the similarities between the Infringing Products and the inventions claimed in the '819 patent, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

99.     This is an exceptional case in view of, *inter alia*, RTIC's and the Jacobsens' willful infringement.

100.    YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, and 285.

101.    RTIC and the Jacobsens also have caused, are causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

## Count IX: Patent Infringement of U.S. Patent 9,187,232 Under 35 U.S.C. § 271

102.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

103.    RTIC and the Jacobsens have infringed and continues to infringe the '232 patent at least by using, selling, and offering to sell the Infringing Products, and on information and belief by making the Infringing Products and/or importing them into the United States, which are covered by one or more claims of the '232 patent.

104.    The Jacobsens have actively induced infringement, and continue to actively induce infringement, of the '232 patent by assisting, overseeing, directing, and personally participating in the design, marketing, advertising, and sales of RTIC's Infringing Products.

105.    RTIC's and the Jacobsens' acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

106.    YETI provided notice to RTIC and the Jacobsens of YETI having patent rights protecting its coolers at least as early as September 5, 2014 when YETI's counsel wrote to RTIC.

107.    Jim Jacobsen also found the application that led to the '819 patent in or around June 2014, well before this lawsuit was filed.   On information and belief, RTIC's and the Jacobsens' infringement was done with knowledge of the '819 patent.

108.    On information and belief, RTIC's and the Jacobsens' infringement of the '232 patent has been and is in willful disregard of the '232 patent and the rights created thereunder, as evidenced at least by the similarities between the Infringing Products and the inventions claimed in the '232 patent, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's continuing disregard for YETI's rights.

109.    This is an exceptional case in view of, *inter alia*, RTIC's and the Jacobsens' willful infringement.

110.    YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, and 285.

111.    RTIC and the Jacobsens also have caused, are causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

**Count X: Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103**

112.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

113.    Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, RTIC and the Jacobsens have diluted and continues to dilute YETI's trade dress under §16.103 of the Texas Business & Commerce Code.   RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof is likely to cause and has caused dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

114.    YETI's trade dress is famous and is entitled to protection under Texas law. YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress for years in the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a famous and well-known indicator of the origin and quality of YETI's cooler products in the United States and in the State of Texas, and YETI's trade dress is widely recognized by the public throughout Texas as

a designation of the source of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before RTIC commenced its use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

115.    RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

116.    On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

117.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's and the Jacobsens' profits, actual damages, enhanced profits and damages, and YETI's reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count XI: Common Law Trade Dress and Trademark Infringement

118.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

119.    Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, and RTIC and the Jacobsens using at least YETI's "YETI" and "ROADIE" trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens, in direct competition with YETI, have engaged and continue to engage in common law trademark infringement.  RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

120.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before RTIC and the Jacobsens commenced  use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

121.    RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law,

including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

122.    On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has been intentional, willful, and malicious.   RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' direct copying of YETI's trademarks in an effort to sell their own cooler products, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

123.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, RTIC's and the Jacobsens' profits, punitive damages, costs, and YETI's reasonable attorney fees.

### Count XII: Common Law Unfair Competition

124.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

125.    Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, and RTIC and the Jacobsens using at least YETI's "YETI" and "ROADIE" trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens, in direct competition with YETI, have engaged and continue to engage in common law unfair competition.   RTIC and the Jacobsens have palmed off/passed off RTIC's goods and/or

have simulated YETI's trade dress in an intentional and calculated manner.  RTIC and the Jacobsens have also interfered with YETI's business.

126.   YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.   YETI's trade dress has also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's trade dress acquired this secondary meaning before RTIC and the Jacobsens commenced use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

127.   RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

128.   On information and belief, RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks has been intentional, willful, and malicious.   RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' direct copying of YETI's trademarks in an effort to sell their own cooler products, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

129.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, RTIC's and the Jacobsens' profits, punitive damages, costs, and YETI's reasonable attorney fees.

**Count XIII: Common Law Misappropriation**

130.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

131.    Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, RTIC and the Jacobsens, in direct competition with YETI, have engaged and continue to engage in common law misappropriation.

132.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  RTIC and the Jacobsens have wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because RTIC and the Jacobsens were not burdened with the expenses incurred by YETI.  RTIC and the Jacobsens have commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

133.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known

indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before RTIC and the Jacobsens commenced use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

134.    RTIC's and the Jacobsens' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.  Moreover, a result of their misappropriation, RTIC and the Jacobsens will, unless such conduct is enjoined by this Court, profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill of YETI's trade dress and its cooler products.

135.    RTIC's and the Jacobsens' misappropriation of YETI's trade dress has been intentional, willful, and malicious.  RTIC's and the Jacobsens' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's trade dress rights.

136.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, RTIC's and the Jacobsens' profits, punitive damages, costs, and YETI's reasonable attorney fees.

### Count XIV: Unjust Enrichment

137.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

138.    Based on the activities described above, including, for example, RTIC and the Jacobsens advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief RTIC and the Jacobsens making the Infringing Products and/or importing the Infringing Products into the United States, and RTIC and the Jacobsens using at least YETI's "YETI" and "ROADIE" trademarks in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, RTIC and the Jacobsens, in direct competition with YETI, have and continue to unjustly enrich themselves. RTIC and the Jacobsens have wrongfully obtained benefits at YETI's expense.  RTIC and the Jacobsens have also, *inter alia*, operated with an undue advantage.

139.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  RTIC and the Jacobsens have wrongfully used and are wrongfully using YETI's trade dress and/or colorable imitations thereof, have wrongfully used YETI's trademarks in competition with YETI, and have gained and are gaining a wrongful benefit by undue advantage.  RTIC and the Jacobsens have not been burdened with the expenses incurred by YETI, yet RTIC and the Jacobsens are obtaining the resulting benefits for their own business and products.

140.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.   YETI's trade dress has also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's trade dress

acquired this secondary meaning before RTIC and the Jacobsens commenced use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

141.    RTIC's and the Jacobsens use of YETI's trade dress and/or colorable imitations thereof and of YETI's trademarks have caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  RTIC has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage of and free-riding on YETI's efforts and investments and enjoying the benefits of YETI's hard-earned goodwill and reputation.

142.    RTIC's and the Jacobsens' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  RTIC's bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by RTIC's and the Jacobsens' direct copying of YETI's trademarks in an effort to sell their own cooler products, by RTIC's and the Jacobsens' stated intent to provide products that have "all of the features of the YETI® Coolers," and by RTIC's and the Jacobsens' continuing disregard for YETI's rights.

143.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's and the Jacobsens' profits.

### **Demand for Jury Trial**

YETI hereby demands a jury trial on all issues so triable.

### **Relief Sought**

WHEREFORE, YETI respectfully prays for:

1.      Judgment that RTIC and the Jacobsens have (i) willfully infringed YETI's trade dress and trademarks in violation of § 1125(a) of Title 15 in the United States Code; (ii) willfully engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iii) willfully engaged in false advertising in violation of § 1125(a) of Title 15 in the United States Code; (iv) willfully diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (v) willfully infringed YETI's registered trademarks in violation of § 1114(1) of Title 15 in the United States Code; (vi) willfully infringed YETI's copyrights in violation of §§ 501, 504, and 506 of Title 17 in the United States Code; (vii) willfully infringed the '819 patent in violation of § 271 of Title 35 in the United States Code; (viii) willfully infringed the '232 patent in violation of § 271 of Title 35 in the United States Code; (ix) willfully diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (x) willfully violated YETI's common law rights in YETI's trade dress and trademarks; (xi) willfully engaged in common law unfair competition; (xii) willfully engaged in common law misappropriation; and (xiii) willfully unjustly enriched themselves at YETI's expense;

2.      An injunction against further infringement and dilution of YETI's trade dress, further infringement of YETI's trademarks, further infringement of YETI's copyrights, further infringement of the '819 and the '232 patents, and further acts of false advertising, unfair competition, misappropriation, and unjust enrichment by RTIC and each of its managers (including but not limited to John Jacobsen and Jim Jacobsen), agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of

YETI's trade dress, trademarks, copyrights, and/or the '819 and the '232 patents, pursuant to at least 15 U.S.C. § 1116, 17 U.S.C. § 502, 35 U.S.C. § 283, and Tex. Bus. & Com. Code § 16.104;

3.      An Order directing RTIC and the Jacobsens to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

4.      An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products; (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress and/or trademarks in RTIC's and the Jacobsens' possession or control; (iii) all plates, molds, and other means of making the Infringing Products in RTIC's and the Jacobsens' possession, custody, or control; and (iv) all advertising materials related to the Infringing Products in RTIC's and the Jacobsens' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing RTIC and the Jacobsens to publish a public notice providing proper attribution of YETI's trade dress and trademarks to YETI and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.      An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant at least to 15 U.S.C. § 1125(b);

7.      An award of RTIC's and the Jacobsens' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and postjudgment interest, and YETI's reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8.     An award of actual damages and/or RTIC's and the Jacobsens' profits, and costs pursuant to 17 U.S.C. § 504(b) and § 505;

9.     An award of damages to compensate YETI for RTIC's and the Jacobsens' infringement of the '819 and '232 patents, together with prejudgment and postjudgment interest, costs and reasonable attorney fees, pursuant at least to 35 U.S.C. §§ 284 and 285; and

10.     For all such other and further relief as this Court deems just and proper.

Dated:  April 14, 2016                    Respectfully submitted,


By: /s/ Michael L. Krashin
Joseph Gray
Texas Bar No. 24045970
joseph.gray@bakerbotts.com
**BAKER BOTTS LLP**
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
Telephone: (512) 322-2639
Facsimile: (512) 322-8385

Joseph J. Berghammer (admitted *pro hac vice*)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Michael L. Krashin (admitted *pro hac vice*)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Victoria R. M. Webb (admitted *pro hac vice*)
Illinois Bar No. 6307279
vwebb@bannerwitcoff.com
Nicholas R. Battey (admitted *pro hac vice*)
Illinois Bar No. 6317416
nbattey@bannerwitcoff.com
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**