IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **YETI COOLERS, LLC** § | |
| § | |
| V. § | A-15-CV-597-RP |
| § | |
| **RTIC COOLERS, LLC, et al.** § | |

**ORDER**

Before the Court are Plaintiff YETI Coolers, LLC's Motion to Compel (Dkt. Nos. 132 and 134 (under seal)); Defendants' Response in Opposition (Dkt. No. 140); and YETI's Reply (Dkt. No. 142. The District Court referred the discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on Tuesday, November 8, 2016, and now enters the following Order.

**I. Background**

This is a trademark infringement and trade dress case in which YETI Coolers, LLC, sues its competitor RTIC Coolers, LLC, along with RTIC's owners John and James Jacobsen, alleging misappropriation of YETI's intellectual property. YETI's motion to compel requests several categories of documents that YETI alleges are materially relevant to YETI's claims in this case. RTIC opposes the motion to compel asserting that it has already produced responsive documents, any additional documents are not relevant, and that the requests are disproportionate to the needs of the case.

**II. Analysis**

A party may discover "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b). Discovery outside of this scope is not permitted. *Id.* at (b)(2)(C)(iii).

Information "need not be admissible in evidence to be discoverable," but any discovery must be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* Though the Court will address specific proportionality arguments below, in general, the Court notes that Plaintiff and Defendants each have at least ten attorneys who have made an appearance in this case. It is apparent that the issues at stake are significant, and that for RTIC at least, this lawsuit poses existential risks. Thus, any proportionality argument has a high bar to clear to be successful.

### A.   Employee documents

The dispute regarding employee emails is focused solely on the universe of emails from which RTIC should search and produce documents. There is no dispute raised regarding the wording or scope of any individual request for production—only whether RTIC should be compelled to search certain employees' emails for responsive documents. Specifically, YETI asks the Court to compel RTIC to collect and produce documents from: (1) all of its customer service employees; and (2) Bo Schulz, Rhonda Dowden, and Bethany Pipkin.

As to the customer service employees, the dispute is whether RTIC should be required to produce emails that exist outside of the ZenDesk system RTIC uses to communicate with and resolve problems for customers. RTIC asserts that in responding to YETI's discovery requests, it interviewed four employees (Joel Kennedy, James Jacobsen, John Jacobsen, and Ashley Cartright), and determined that all emails from RTIC customer service employees that would be responsive to YETI's requests would have been created within the ZenDesk email system, and thus it limited its

production to only those emails. It admits that, other than interviewing employees, it did not look for or review any emails among customer service employees contained in RTIC's "traditional" email system. YETI's requests for production seek emails from RTIC's customer service employees that discuss or reference YETI. RTIC contends that based on the manner in which it has structured its communication systems, customer service employees would only be communicating about YETI through ZenDesk, and essentially argues that—despite having not reviewed any of the non-ZenDesk emails—there are no responsive documents in the traditional email system. At the same time, RTIC concedes that it is possible that, despite the company's procedures directing how communications should take place, there could be emails between the customer service employees themselves, or between a customer service employee and an RTIC employee outside that group, that do discuss YETI. As noted, it further concedes that it has not reviewed any emails in the conventional email system to see whether there are any responsive emails.

      It became apparent at the hearing that, while RTIC's objections to these requests are couched in terms of relevance, it is actually arguing that the time and expense of reviewing the additional email accounts for responsive documents is disproportionate to the likely outcome of such a search. There is, however, little evidence to support that conclusion. For example, there is no evidence of what time or expense would be involved in searching the internal (*i.e.* non-customer) communications for discussions of YETI. It would seem that the parties could easily agree on terms that would make such a search reasonable and affordable. Further, emails among RTIC employees discussing YETI and customer confusion would be highly relevant to this case. Additionally, as RTIC itself pointed out, it is a "small" company, and thus the number of employees is not so high that a search of the emails is out of proportion to the claims in this case and the parties' resources.

Finally, YETI has discovered some emails from other employees' files that are examples of communications on the very topics at issue which involve customer service employees, demonstrating that there are in fact responsive documents within this universe. Given the lack of evidence of burden, combined with the potential importance of such communications, and the likelihood of responsive documents existing, the Court finds that RTIC should be compelled to search for responsive documents from the non-Zendesk emails of all of the customer service employees.

YETI also requests that RTIC be compelled to review and produce responsive documents from three specific RTIC employees' accounts—those of Bo Schulz, Rhonda Dowden, and Bethany Pipkin. RTIC objects to the request on the ground that emails from these employees would be irrelevant to this dispute. RTIC adds that because it a small company, the job descriptions of these three employees are potentially misleading, or at least do not capture well their day-to-day duties. In the case of Schulz, RTIC asserts that although he has been included in some management team discussions, his primary role is to manage the warehouse, and based on RTIC's counsel's conversations with him, he is unlikely to have any responsive documents. In the case of Pipkin, her job is to answer the front door, and although she might occasionally handle the sale of products to walk-in customers, that is rare and she likely would not have any relevant documents. Finally, RTIC argues that YETI misrepresents Dowden as being "involved in purchasing RTIC's coolers from RTIC's manufacturer," Dkt. No. 134 at 5, when she actually only "[s]upports the Click 2 Ship Technology and [RTIC's] manufacturers on container shipments, freighting inventory around the country for Cheap Cheap Moving Boxes," Dkt. No. 140-2 at 3. RTIC thus claims that she too is unlikely to have responsive documents within her emails.

YETI responds that in the case of Schulz and Dowden, RTIC has argued that it got into the cooler business to capitalize on its shipping expertise, not to copy YETI. YETI intends to dispute RTIC's claim regarding its reason for entering the cooler market, and argues that these individuals may have documents containing information regarding shipping delays and logistics, justifying a search of their emails. The Court agrees. In the case of Pipkin, RTIC concedes that she interacts with walk-in customers, and given the claims at issue in this case, the Court agrees with YETI that she may have responsive documents in her possession. The Court will grant the motion to compel as to these employees as well.

### B. Customer service telephone calls

YETI's motion also seeks to compel RTIC to produce the raw recordings of over 100,000 phone calls to RTIC's customer service line. The recordings include 44,000 voicemails and 62,000 phone conversations. RTIC does not object to the relevance of the request, but argues it would be unduly burdensome to review these calls, particularly given that a review is unlikely to reveal more than a handful of relevant evidence.

In the parties' communications prior to the filing of the motion, RTIC offered to produce transcripts of any calls YETI could identify by ticket number. YETI responded that it could not identify the relevant calls without more information, and proposed that all of the calls be transcribed, with the parties splitting the cost of the transcriptions. RTIC declined this offer. RTIC argues that the cost of transcription is unjustified given that the likely result will be a minuscule number of relevant conversations. RTIC further argued that even shifting the transcription costs entirely to YETI—costs YETI indicated at the hearing it would bear—does not solve RTIC's expense issue, because RTIC's attorneys contend that it would be irresponsible to produce the raw audiofiles

5

without first reviewing them and the cost of that will be substantial.

Once again, RTIC's arguments were not backed up with concrete evidence. There is no evidence of what the costs of transcribing the emails would be, nor is there anything (other than counsel's speculation) to support the assertion that the recordings are unlikely to yield many responsive conversations. While the Court is somewhat sympathetic to RTIC's counsel's reluctance to produce recordings it has not listened to, the basis for the worry seems more theoretical than real. The calls are supposed to all be from RTIC customers to RTIC's toll free customer service number. Thus, there is no reason to believe that the calls would be privileged or would contain trade secrets. Nor did RTIC even make a cursory review of a sample of the calls to provide the Court with any concrete reason to believe that failure to have counsel review every call before production would expose RTIC to some sort of risk. Further, there is a protective order already in place, and it includes a provision protecting RTIC from inadvertent disclosure of privileged material. Rule 26 provides RTIC with similar protection. FED. R. CIV. P. 26(b)(5)(B).

Given that YETI is willing to bear the expense of review and transcription, requiring RTIC to produce the recordings is not unduly burdensome. Accordingly, the Court will grant YETI's motion to compel the production of the raw audiofiles of RTIC's customer service telephone calls and voicemails. To alleviate some of RTIC's concerns, the Court will also order that YETI provide RTIC with a copy of all call transcripts it creates within one week of the creation of the transcript, or such other time period the parties agree upon.

### C.    Financial discovery about related entities

Finally, YETI seeks discovery from RTIC and the Jacobsens related to various RTIC entities and products that are not the subject of this case. Specifically, YETI seeks: (1) documents reflecting

the sales and profits from certain non-accused products; and (2) financial documents related to other non-accused entities controlled by or related to the Jacobsens.

As to the first category, RTIC stated at the hearing that it had already produced spreadsheets containing the requested information. It provided the Court with an example of what it had already produced, and the Court agreed that it appeared to be responsive to YETI's request. Given this, the Court will deny this portion of the motion to compel, without prejudice to YETI raising the issue again once it reviews the spreadsheets identified by RTIC.[1]

With regard to the financial information of non-accused entities, the Court agrees with RTIC that this information is outside the scope of discovery. The best argument YETI could offer as to the relevance of the financial reports and tax returns from affiliated entities is that it would be relevant to YETI's ability to collect on any judgment it might obtain in this case. When asked for authority to support the ability to do discovery in aid of a judgment before a judgment has been obtained, YETI was unable to offer the Court any, nor has the Court located any authority that would permit the discovery sought here. While the Court agrees that the Jacobsens have created a byzantine corporate web, and that such a structure is a valid reason to suspect that the Jacobsens may be attempting to frustrate YETI in collecting a judgment, it is premature to allow discovery into the financial workings of non-accused entities.

### III. CONCLUSION

For the reasons set forth above, YETI Coolers, LLC's Motion to Compel (Dkt. No. 134) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the employee

---

[1]YETI's counsel could not confirm at the hearing that the documents resolved YETI's motion to compel on this point, but stated that he would review the information after the hearing to make that determination.

email accounts as described above, and as to the customer service recordings, and **DENIED** as to financial records relating to non-accused products and entities.

SIGNED this 16th day of November, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE