# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **YETI COOLERS, LLC,**<br><br>              Plaintiff,<br><br>v.<br><br>**RTIC COOLERS, LLC,**<br>**JOHN JACOBSEN, AND**<br>**JAMES JACOBSEN,**<br><br>              Defendants | **Case No. 1:15-cv-00597-RP**<br><br>**The Hon. Robert L. Pitman**<br><br>**Special Master Karl Bayer**<br><br>**Jury Trial Demanded** |

## DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF YETI'S ALLEGED EXPERT KIRK D. DEETER

**I.     INTRODUCTION**

YETI improperly camouflages as "experts" four outdoorsmen who have no expertise in marketing, consumer perception, or conducting surveys, as is clearly required to opine as experts concerning the trade dress issues for which they are offered. The outdoorsmen applied no methodology whatsoever, and instead merely reference anecdotes and speculative personal, lay opinions to support their otherwise unfounded legal conclusions that YETI's asserted trade dress is famous and has acquired secondary meaning.

It is well-established that a proper analysis of these complicated legal issues must be performed by an expert in the field of marketing and/or consumer perception to, at a minimum: (i) assess numerous relevant factors as articulated by well-established case law; (ii) understand fine distinctions between the asserted trade dress and other aspects of YETI's coolers (e.g., the "YETI" name, functional features, and the associated outdoor lifestyle); and (iii) conduct a consumer survey. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248, 249 (5th Cir. 2010) ("We have consistently expressed a preference for 'an objective survey of the public's perception of' the mark at issue."). None of the outdoorsmen have the training or expertise to opine on the trade dress issues involved here, and none apply *any* methodology at all, much less a methodology that is well-established and accepted in cases such as this one. Indeed, these ten-page reports consist of conclusory, speculative statements based on personal perceptions and unspecified conversations. Because each of these so-called experts lacks the requisite qualifications and applied no reliable methodology, the opinions should be precluded. *See e.g.*, *Starbucks Corp. v. Lundberg*, No. 02-CV-948, 2005 WL 6036699, at *5 (D. Or. May 25, 2005) ("Although Jensen may have specialized knowledge about the coffee business in general, she does not purport to be an expert in consumer perceptions of trademarks. Nor does Jensen's declaration indicate that she relied on any outside data, treatises, or other generally accepted methodology to

1

support her conclusions.  In fact, Jensen puts forth no information about what methodology she used to reach her conclusions, which is expressly required for admission of expert testimony."); *LVL XIII Brands, Inc. v. Malletier*, No. 14-CV-4869, 2016 WL 4784004, at *11-13 (S.D.N.Y. Sept. 13, 2016) ("The expertise most germane to [assessing secondary meaning] involves training or experience in performing empirical analyses.  But as to this critical qualification, [the proffered expert's] credentials are woefully deficient.").

Kirk D. Deeter (an outdoor editor and writer) renders opinions on consumer perception of products, trademarks, and trade dress—areas requiring specialized knowledge—but lacks the qualifications to opine on these subjects.  For example, despite opining as to the fame of the YETI coolers in his report, Deeter admitted during his deposition that he does not know whether "famous" has a specific meaning in the trademark and trade dress context.  It is unsurprising, therefore, that his opinions are conclusory and not the product of reliable principles and methods—indeed, there is no indication that Deeter's opinions are the result of ***any*** methods at all.  Deeter does not purport to base his opinions on surveys, data, or any other analysis—merely his own alleged "observations" and unspecified conversations.  Deeter's "opinions" amount to no more than unreliable speculation based on, at most, hearsay.

Permitting Deeter to testify as to his proffered opinions would run afoul of the requirements of Rule 702 and prejudice RTIC.  He lacks adequate expertise and his testimony would not be helpful to the trier of fact.  His unreliable speculation cannot be verified and would serve only to confuse the jury.  According to *Daubert v. Merrell Dow Pharm., Inc.*, "a key question" in assessing "a theory or technique" is "whether it can be (and has been) tested."  509 U.S. 579, 593 (1993).  Here, Deeter's opinions cannot be tested.  Accordingly, Defendants request that the Court exclude Deeter's opinions and testimony and any reliance thereon.

Per CV-7(i), the parties have met and conferred regarding the subject of this motion. YETI has indicated that it will oppose this motion.

## II.     OVERVIEW OF CHALLENGED OPINIONS

The Expert Report of Kirk D. Deeter (Sep. 29, 2016) ("Deeter Rpt.") (Exh. A) is comprised merely of eleven paragraphs regarding his "professional background and qualifications" and ten paragraphs constituting his "report and declaration." According to the report, Deeter's qualifications are that he is an outdoor editor and writer. Deeter Rpt. ¶¶ 3-13. Deeter does not purport to have any expertise in marketing or consumer perception.[1]

As for his proffered opinions, which he asserts are based on his "experience and expertise," Deeter provides several technical opinions on complicated legal issues such as fame and secondary meaning (Deeter Rpt. ¶ 2):

- "individuals in the industry, including myself, associate the overall appearance of those coolers with one company, and that company is YETI";

- "YETI's Tundra® and Roadie® coolers have become iconic and famous"; and

- "when you see the overall design and appearance of a Tundra® or Roadie® cooler, regardless of any words or brands on the cooler, you immediately know it is a YETI."

Deeter's report cites no data, surveys, advertisements, or any analysis for the opinions it provides. The only exhibit to the report is a collection of Deeter's own writings, which are referenced in the qualifications section of his report. *See* Deeter Rpt. ¶ 7 & n.1. Deeter claims that his opinions are based on his "personal observations and conversation with others." Transcript of the Deposition of Kirk Deeter (Nov. 30, 2016) ("Deeter Tr.") (Exh. B) 226:20-22. However,

---

[1] Though Deeter testified that he did some marketing for his father's company (Deeter Tr. 22:14-21), nowhere has he asserted that any of his opinions are based on that alleged experience, nor could he, as that alleged experience does not qualify him to opine on the subjects at issue. (*See* Deeter Rpt. ¶¶ 3-13 (stating that Deeter's qualifications are that he is an outdoor editor and writer).)

3

nowhere has Deeter identified the "others" that he allegedly had conversations with, the number and content of any such "conversations" or any description of the "personal observations." In short, Deeter's report is composed of conclusory statements absent any supporting evidence.

## III. ARGUMENT

### A. DEETER IS NOT QUALIFIED TO RENDER OPINIONS AS TO CONSUMER PERCEPTION OF FAME AND SECONDARY MEANING

Rule 702 states that only a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." Fed. R. Evid. 702; *see also* Fed R. Evid. 702 Committee Note (2000) (stating that the proponent of an expert "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence"). Deeter lacks the requisite qualifications for the opinions he provides here, and, accordingly, his opinions should be precluded.

Deeter, though perhaps an expert in the field of outdoor editing and writing, is not qualified to offer opinions on the consumer products, trademark, and trade dress issues on which he opines. Deeter's proffered opinions that YETI coolers are "iconic and famous," that "individuals … associate the appearance of those coolers with one company" amount to opinions in the field of consumer perception or market research. *See, e.g.*, *Starbucks*, 2005 WL 6036699, at *5 (excluding proffered opinions as to likelihood of confusion, because expert was "not an expert in consumer perception"). Yet, Deeter lacks the requisite expertise in consumer perception.

As Deeter's report makes clear, he is an outdoor editor and writer. Deeter Rpt. ¶¶ 3-13. Deeter's report nowhere describes any expertise in consumer perception or marketing and Deeter confirmed that he has no such specialized training. *See* Deeter Tr. 144:15-21 (admitting that he was not formally trained in the field of marketing); *id.* at 20:20-22 (stating that he studied English in college and did not receive a college degree); *id.* at 30:1-6 (stating that he could not recall

4

whether he had ever personally "engag[ed] in preparing and disseminating and analyzing market surveys").

Moreover, Deeter lacks the necessary understanding of the concepts on which he opines. Deeter's report nowhere mentions the legal principles involved in this case and his testimony underscores his lack of knowledge. For example, despite providing opinions on "fame," Deeter testified that he does not know whether "famous" has a specific meaning in the trademark context:

> Q. Where did you come up with the idea that the YETI coolers are famous?
> A. I just think that, you know, "famous" is a word that I used to, you know – came out of my mouth that describes something that's widely recognized. That's, to me, what famous means.
> Q. ***Are you aware that the term "famous" or "fame" has special meaning in the trademark or trade dress context?***
> A. ***I'm not.***

Deeter Tr. 204:2-12 (emphasis added); *see also id*. at 231:20-232:1 ("Q. Okay. Are you aware that the term 'iconic' has a special meaning in the trademark and trade dress context? A. I don't."). He simply does not have sufficient expertise to make the opinions he proffers here. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 797-98 (N.D. Tex. 2012) (expert's testimony unreliable "because he admits that he does not understand the concepts of 'unjust enrichment' and 'disgorgement'").

Indeed, proffered experts similar to Deeter are regularly deemed as lacking the necessary qualifications to opine on consumer perception. For example, in *Starbucks*, the court determined that the proposed expert—a co-founder of a coffee business—was not qualified as an expert in consumer perception of trademarks, even though she was knowledgeable about the coffee businesses at issue. 2005 WL 6036699, at *5. In excluding her testimony and the "unsupported conclusions stated in her declaration," the court noted that "she does not purport to be an expert in consumer perceptions of trademarks. Nor does [her] declaration indicate that she relied on any

5

outside data, treatises, or other generally accepted methodology to support her conclusions." *Id.* at *5-6. Like the expert at issue in *Starbucks*, Deeter may be an expert in outdoor writing, but he has no education, experience, skill, or training sufficient to qualify him as an expert in consumer perception. *See also LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 957 (N.D. Ill. 2009) (expert was qualified as to thermodynamics, but not as to consumer perception; expert "conceded that he is not an expert in marketing, consumer surveys or consumer perceptions"); *Hackett v. Procter & Gamble Co.*, No. 06-CV-2272, 2008 WL 4646049, at *2 (S.D. Cal. Oct. 17, 2008) (expert with background in chemistry was not qualified to opine on consumer perception and market research).

By way of comparison, Defendants' expert Dr. Tülin Erdem is a Professor of Business Administration and Marketing at the Stern School of Business, NYU. Expert Report of Tülin Erdem (Nov. 16, 2016) (Exh. C) ¶ 1. Over her decades-long career, Dr. Erdem has served as the Editor-in-Chief of the Journal of Marketing Research, the preeminent academic journal of the American Marketing Association, and taught numerous courses on empirical market research, branding, brand, product, and marketing management, and international marketing. *Id.* at ¶ 4. And Dr. Erdem has focused her research on the fields of "consumer behavior and choice, consumer decision-making under uncertainty, advertising, brand management and equity," etc. *Id.* at ¶ 3. Deeter's credentials do not come even close to meeting that standard. Because YETI has not established that Deeter has the requisite expertise in consumer perception, he is not qualified as an expert as to the opinions proffered in his report. Accordingly, his opinions and report should be excluded under Rule 702.

## B.  DEETER DID NOT USE RELIABLE PRINCIPLES AND METHODS

### 1.  DEETER DID NOT EMPLOY A RELIABLE METHODOLOGY

Rule 702 states that an expert, even if qualified, can only testify to opinions if such opinions are "the product of reliable principles and methods." Fed. R. Evid. 702(c). Such testimony must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. In addition to Deeter's inadequate qualifications, Deeter's opinions are not the result of reliable principles and methods. Indeed, they do not appear to be the result of ***any*** principles and methods at all. Accordingly, his opinions should also be excluded on this independent basis.

Deeter did not employ any reliable methodology. Although he provides so-called expert opinions on legal issues such as "fame" and "secondary meaning," Deeter does not understand the legal definition of fame, nor does he even purport to analyze the relevant factors for fame or secondary meaning.[2] Moreover, it is undisputed that Deeter has not conducted any type of survey to support his testimony in this case. *See* Deeter Tr. 204:18-205:10 (admitting that he did not perform any formal "market surveys, polls, or studies"); Deeter Tr. 223:10-19 ("Q. In forming your opinion … did you conduct a formal marketing survey or poll …? A. No. I just fished with a lot of guides."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) ("[Customer] surveys … are a routine and well-established feature of trademark practice."); *Amazing Spaces*, 608 F.3d at 233 (affirming that no fact issue had been raised regarding secondary meaning in view of plaintiff's failure to submit any survey evidence). Instead, Deeter stated that

---

[2] *See, e.g.*, *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008) (identifying four factors for assessing fame: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) actual recognition of the mark; and (iv) whether the mark was registered); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 544 (5th Cir. 2015) (identifying seven factors for assessing secondary meaning, which are similar to the fame factors).

he based his opinions on his "personal observations and conversations with others." Deeter Tr. 226:19-22.  The absence of any type of data, structured research, or analysis, is telling.

Deeter's off-hand conversations do not qualify as "reliable principles and methods" under Rule 702.  Deeter claims that "if you asked a hundred fishermen to identify a YETI cooler out of a lineup, you expect more than 90 to be able to do so, regardless of whether the brand was on the cooler." Deeter Tr. 225:7-13.  However, when asked about the number of fishermen he spoke with to form this opinion, Deeter admitted that, "[y]ou know, I don't know specific numbers, but I would assume that was dozens." Deeter Tr. 227:7-13.

Further, some of Deeter's opinions appear to be based on his "own perception."  For example, Deeter opines that, "the cooler immediately struck me as having a very unique and distinctive appearance." Deeter Rpt. ¶ 15.  When asked whether he was "basing that on [his] own personal perspective," he responded: "That's right." Deeter Tr. 186:20-187:2.  Thus, taking Deeter at his word, his assertion amounts to only a personal belief—not expert opinion based on reliable principles and methods.

Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation." *Pharr v. Wille*, No. 1:14-CV-762, 2016 WL 4082740, at *7 (W.D. Tex. July 29, 2016).  Deeter's purported research is subject to biases, lacks indicia of scientific precision and accuracy, and results in opinions that fail to meet the reliability prong of the Federal Rules of Evidence.  Further, Defendants are unduly prejudiced by Deeter's proffered opinions because there is no way Defendants can test the basis for Deeter's conclusions.  He does not provide any basis.

Deeter failed to conduct any market research, failed to adequately apprise himself of the legal principles at issue, and offered only conclusory opinions. Accordingly, YETI has failed to establish that his testimony is "the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Thus, the Court should exclude Deeter's unsupported and unreliable testimony in its entirety.

### 2. DEETER'S OPINIONS ARE UNRELIABLE SPECULATION

Deeter's report also consists of conclusory statements untethered to the facts, and is therefore pure speculation. For example, Deeter fails to isolate any alleged "secondary meaning" or "fame" of the actual asserted trade dress apart from the "YETI" brand name, the functional features of the coolers, or the outdoor enthusiast lifestyle theme that is woven throughout YETI's advertising. Although he opines that the coolers have become "famous and iconic" (Deeter Rpt. ¶ 2), Deeter does not confirm that the asserted trade dress, alone, is responsible for making the coolers "iconic." Indeed, Deeter nowhere uses the term "trade dress" in his report. Moreover, it is clear that Deeter did not isolate the asserted trade dress from other aspects of the coolers, because when he was asked for the basis of his opinion that the YETI coolers' "design and appearance have become famous," Deeter acknowledged that the coolers' "function and performance" also factored into the fame of the coolers. Deeter Tr. 202:6-203:20. Moreover, it is difficult to imagine that Deeter's alleged basis for his opinions—"personal observations and conversation with others"—could have involved distinguishing between the asserted trade dress at issue and the YETI brand name.

As another example, Deeter claims that "individuals in the outdoor and fishing industry associate the overall design and appearance of the coolers with a single source, and that source is YETI, regardless of whether any words or brands are on the coolers." Deeter Rpt. ¶ 20. However, when asked about how many fishermen he had spoken with as the basis of this opinion, Deeter

9

answered: "I would assume that was dozens." Deeter Tr. 227:7-13. Further, Deeter presents no evidence of who these "dozens" of people are, so there is no way to determine whether these people are representative of "individuals in the outdoor and fishing industry." Thus, Deeter presents no reliable basis for generalizations such as, "*individuals in the industry*, including myself, can easily determine whether a cooler is a YETI cooler just by the overall design and appearance of the cooler." Deeter Rpt. ¶ 20 (emphasis added).

As a third example, Deeter claims that "the popularity of the Tundra® and Roadie® coolers can be attributed not only to the high-quality of those coolers, but to YETI's extensive advertisement and promotion of those coolers, which prominently show off the design and appearance of the coolers." Deeter Rpt. ¶ 17. However, Deeter does not point to a single advertisement, much less any content therein. And, when asked what he meant when he wrote that YETI "prominently show[s] off the design and appearance of the coolers," Deeter responded vaguely and admitted that the coolers' functional "attributes" are also featured: "Oftentimes in a YETI advertisement, it will look just like this. It will show, boom, here's our cooler, and then talk about its attributes." Deeter Tr. 200:3-9.

Thus, in addition to the failings described above, Deeter's opinions are, at best, merely personal speculations of an outdoor editor, based on his personal perceptions and nondescript "conversations." This does not pass muster under Rule 702, and should, accordingly, be excluded.

**IV.  CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court exclude the report, declarations, and any testimony of YETI's proffered expert Kirk D. Deeter, and any reliance thereon.

Dated:  December 18, 2016							Respectfully Submitted

**FISH & RICHARDSON, P.C.**

*/s/ Bailey K. Harris*                                                _____

**Thomas M. Melsheimer**
Texas Bar No. 13922550
melsheimer@fr.com
**Neil J. McNabnay**
Texas Bar No. 24002583
mcnabnay@fr.com
**P. Weston Musselman, Jr.**
Texas Bar No. 14749600
musselman@fr.com
**Natalie L. Arbaugh**
Texas Bar No. 24033378
arbaugh@fr.com
**Ricardo J. Bonilla**
Texas Bar No. 24082704
rbonilla@fr.com
**Katrina Eash**
Texas Bar No. 24074636
eash@fr.com
**Michael Bittner**
Texas Bar No. 24064905
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

**William T. "Tommy" Jacks**
Texas Bar No. 10452000
jacks@fr.com
111 Congress Avenue, Suite 810
Austin, TX 78701
(512) 472-5070 - Telephone
(512) 320-8935 - Facsimile

**Bailey K. Harris**
Texas Bar No. 24083139
bharris@fr.com
**Jackob Ben-Ezra**
Texas Bar No. 24073907
ben-ezra@fr.com
1221 McKinney St., Suite 2800

11

Houston, TX 77010
(713) 654-5300 - Telephone
(713) 652-0109 – Facsimile

**Elizabeth E. Brenckman**
**(admitted** *pro hac vice*)
New York Bar No. 5272042
brenckman@fr.com
601 Lexington Avenue, Floor 52
New York, NY 10022
(212) 641-2305 – Telephone
(212) 765-5070 – Facsimile

**Sheryl Garko**
*(admitted pro hac vice)*
Massachusetts Bar No. 657735
garko@fr.com
**Mark S. Puzella**
*(admitted pro hac vice)*
Massachusetts Bar No. 644850
puzella@fr.com
One Marina Park Drive
Boston, MA 02210-1878
(617) 542-5070 – Telephone
(617) 542-8906 – Facsimile

**Sara Fish**
*(admitted pro hac vice)*
Georgia Bar No. 873853
sfish@fr.com
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 724-2846 – Telephone
(404) 892-5002 - Facsimile

12

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 18, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

               */s/ Bailey K. Harris*_____
               **Bailey K. Harris**

**CERTIFICATE OF CONFERENCE**

I certify that on December 16, 2016, counsel for the parties conferred in a good-faith attempt to resolve this matter pursuant to Fed. R. Civ. P. 37(a)(1), Local Rule CV-7(i), and Local Rule AT-4(f), but no agreement could be reached.

               */s/ Bailey K. Harris*_____
               **Bailey K. Harris**