**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **YETI COOLERS, LLC** | § | |
| | § | |
| **V.** | § | **A-15-CV-597-RP** |
| | § | |
| **RTIC COOLERS, LLC, et al.** | § | |

**ORDER**

Before the Court are the following motions, referred to the undersigned for resolution:

•   Third-Party Denise Marie Martin's Motion to Quash (Dkt. No. 154);

•   YETI's Motion to Compel (Dkt. No. 157);

•   Defendants' Motion to Compel the Continuation of the 30(b)(6) Deposition of YETI Coolers, LLC's Designated Deponent Corey Maynard (Dkt. No. 161);

•   Opposed Joint Motion to Quash Non-Party Subpoenas (Dkt. No. 163);

•   YETI's Second Motion to Compel and Motion for Contempt and Sanctions Regarding Defendants Failure to Produce Customer Service Audio Files (Dkt. No. 168);

•   YETI's Opposed Motion for Compelling the Continued Deposition of John Jacobsen (Dkt. No. 172); and

•   Defendants' Motion to Compel the Continuation of the Deposition of YETI Expert Witness Dr. Richard Crawford (Dkt. No. 178).

The Court held a hearing on all of the motions on December 14, 2016, and made rulings on the majority of the motions from the bench, and took some of the matters under advisement. This order memorializes those rulings already made, and also announces rulings on the matters taken under advisement.

**1.     Third Party Denise Marie Martin's Motion to Quash (Dkt. No. 154)**

Based on YETI's Notice withdrawing the subpoenas addressed in this motion (Dkt. No. 175), this motion is **DENIED AS MOOT.**

**2.     YETI'S Motion to Compel (Dkt. No. 157)**

In this motion, YETI seeks an order compelling RTIC to produce three categories of information: (1) opinions of counsel regarding whether RTIC's coolers infringed on YETI's coolers, based on an alleged waiver of the privilege; (2) opinions of counsel that were not identified in RTIC's privilege log; (3) the continuation of the deposition of James Jacobsen on certain issues.

   **A.     RTIC's alleged waiver of the attorney-client privilege**

YETI moves to compel the production of opinions of counsel from different law firms relating to whether RTIC products infringe YETI's intellectual property, arguing that privilege has been waived. YETI asserts that RTIC has have waived the attorney-client privilege for opinions it procured from counsel regarding YETI's intellectual property because RTIC shared the opinion that RTIC was not infringing on YETI patent or trade dress with manufacturer Jacky Jiang. In an e-mail to Jiang, John Jacobsen states, "We believe and our attorney has confirmed that we are not infringing on YETI Patent or Trade Dress." Dkt. No. 157-5.[1] YETI asserts this statement constitutes a waiver as to any opinions of counsel regarding RTIC's infringement of YETI's intellectual property,

---

[1] YETI identified two other statements to Jiang that it alleges qualify as waivers of attorney-client privilege. "We have been working with a law firm on changes to not infringe on YETI," and, "Why did you make the curve? We cannot do this as it is YETI protected trade dress. . . ." YETI's counsel appeared to concede at the hearing that these two statements do not qualify as communications subject to the attorney-client privilege, and the Court certainly finds they do not. Disclosure that one is consulting with counsel does not waive a privilege. And, stating that YETI has protected trade dress does not in any way constitute a privileged statement, as YETI had communicated to RTIC that it was YETI's position that the curve is an element of its trade dress.

including all related opinions of counsel and all related correspondence. YETI also requests the opportunity to depose more RTIC witnesses about the legal opinions and related documents. RTIC responds that it never disclosed a privileged communication, let alone a significant part of a privileged communication to a third party, and that nothing in the relevant emails is sufficient to establish waiver.  Additionally, RTIC contends that the actual underlying e-mails upon which the information shared with Jiang was based, are subject to work-product privilege protection, which is not waived by disclosure.  Additionally, they assert they are not relying on the legal opinion of non-infringement as a defense in this suit.

      Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation. *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, 251 F.R.D. 238, 244 (E.D. Tex. 2008); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *3 (N.D. Tex. July 17, 2002); *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("To retain the attorney-client privilege, the confidentiality surrounding the communications made in that relationship must be preserved."). The Fifth Circuit has held that "[a] client waives the attorney-client privilege . . . by failing to assert it when confidential information is sought in legal proceedings." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).  However, subject matter waiver, which YETI seeks here, generally occurs only where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable.  *See In re Sealed Case*, 676

F.2d 793, 809 & n.54 (D.C. Cir. 1982); *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590, *8 (N. D. Ill. 1995).[2]

YETI relies upon several cases for its contention that RTIC waived its attorney-client privilege regarding the opinions of counsel it disclosed. YETI argues the waiver is broad and entitles it to discovery of any opinions of RTIC's counsel regarding RTIC's infringement of YETI's intellectual property at issue in this suit. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) (employer in FLSA case waived the privilege when, *in the context of litigation*, it failed to assert the privilege when information was sought, and permitted testimony about portions of the attorney-client communication); *In re Target Tech. Co.*, 208 F. App'x 825 (Fed. Cir. 2006) (upholding finding of waiver when client issued a sales letter disclosing the client's specific request to counsel and the response received from counsel); *Electro Scientific Indus., Inc. v. Gen'l Scanning, Inc.*, 175 F.R.D. 539 (N.D. Cal. 1997) (news releases stating client had been advised by legal counsel that patents were invalid based on prior patents and publications not cited to the PTO waived the privilege, as news release voluntarily disclosed an important and substantive part of confidential communications with counsel); *Nance v. Thompson Medical*, 173 F.R.D. 178 (E.D. Tex. 1997) (attorney-client privilege waived as to documents turned over to a public relations agency). These cases are distinguishable from the instant case, and YETI misstates the law.[3]

---

[2] Subject matter waiver also applies when the advice-of-counsel defense is used to rebut a an allegation of willful infringement. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371, 1367–68 (Fed. Cir. 2007). When a party discloses an opinion of counsel to rebut a charge of willful infringement, that party waives attorney-client privilege to all communications that relate to the same subject matter. *Id.* at 1372. Counsel for Defendants assured the Court that they are not asserting an advice-of-counsel defense in this case.

[3] The Federal Circuit has held that in patent litigation, regional circuit law controls the issue of "waiver of the disclosure of privileged material." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268,

Additionally, it is YETI, and not RTIC, that asserts the communication in issue are privileged. A communication is privileged if it is provided to "an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (internal citations and quotations omitted). The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Accordingly, the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services. *See Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). Here, the statement by Jacobsen to Jiang was at most a disclosure of a legal conclusion and not the disclosure of a confidential attorney-client communication. *See Nat'l West. Life Ins. Co. v. West. Nat. Life Ins. Co.*, 2010 WL 5174366, at *2 (W.D. Tex. Dec. 13, 2010); *Zenith Electronics Corp. v. Exzec, Inc.*, 1997 WL 798908, *4 (N.D. Ill. Dec.24, 1997) (mere restatements of an attorney's conclusion do not disclose a particular attorney-client communication and therefore does not constitute a waiver); *Rates Technology, Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 134–35 (M.D. Fla. 1987) (statements revealing the general, ultimate conclusion of an attorney that the client was not in violation of a patent does not constitute a waiver of the attorney-client privilege). Therefore the statement to Jiang, that "[w]e believe and our attorney

---

1272 (Fed. Cir. 2001) (applying Fifth Circuit law to waiver issue). Thus to the extent YETI cites to cases employing other jurisdiction's law on waiver, the cases are inapposite. *See In re Target Tech. Co.*, 208 F. App'x at 825 (relying on Ninth Circuit law); *Nance v. Thompson Medical*, 173 F.R.D. 178 (E.D. Tex. 1997) (applying New York law and finding waiver as to only the documents in which the waiver was disclosed).

has confirmed that we are not infringing on YETI Patent or Trade Dress," was not an attorney-client communication, or the disclosure of such a communication.

Moreover, even if the Court were to conclude that the email did in fact waive the privilege on an attorney-client communication, the waiver would be very limited, as the waiver would only appropriately apply to the email itself, and not—as YETI contends—to all attorney-client communications on that subject matter. *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *3 (N.D. Tex. July 17, 2002) (draft letter from litigation counsel stating "that no infringement exists" was not a privileged communication, and even if it was, any waiver from sharing it was limited to the documents themselves). The Court will therefore **DENY** YETI'S Motion to Compel on this point.

### B. Did RTIC fail to identify opinions of counsel in their privilege log?

In its motion to compel, YETI argued that RTIC had waived the attorney-client privilege with regard to any opinions of counsel as RTIC failed to identify those opinions on its privilege log. At the hearing, YETI essentially abandoned this argument, and complains now only about the sufficiency of the privilege log, and asks that RTIC be ordered to provide more detail in that log.[4] RTIC asserts that the log is more than adequate to meet the requirements of Rulke 26. The Court has reviewed the entries in RTIC's privilege log and finds them to be sufficiently specific. The will therefore **DENY** YETI'S motion to compel on the issue of the privilege log.

---

[4]With regard to the waiver argument, YETI's attorney stated as the hearing that "I don't like this argument, because it's a 'gotcha' argument . . . so I will go on record to say with respect to that argument, I personally would view that as a Draconian remedy that a court would be well within its discretion to say 'I'm not going to require releasing these full opinions.'" Digital recording of 12/14/16 hearing at 1:29:51 to 1:30:41.

  **C. Additional time for James Jacobsen's Deposition**

In its motion, YETI requested additional time to depose James Jacobsen's on two issues. As stated on the record at the hearing, the request for more time on the first of those issues (alleged false consumer testimonials and false reviews of RTIC products), that motion is now moot.  On the second issue—questioning Jacobsen about any attempts by RTIC to copy YETI products other than hard-sided coolers—for the reasons stated on the record, the Court will grant the motion and permit YETI to depose James Jacobsen for one additional hour on that topic.

**3. Motion for additional time for the deposition of Corey Maynard (Dkt. No. 161)**

Defendants request an additional seven hours to depose YETI's 30(b)(6) corporate representative Corey Maynard.  Maynard is YETI's vice president of marketing and RTIC noticed him for a personal deposition.  YETI also designated Maynard to be its corporate representative on 32 of the topics contained in RTIC's 30(b)(6) notice to YETI.  Based on this, RTIC requested that YETI present Maynard for two full days of deposition, and YETI refused.  RTIC attempted to solve its problem by trying to cover Maynard's 30(b)(6) topics with another deponent that had been "co-designated" by YETI to address those same topics.  But it turned out that the other deponent has dyslexia and all documents addressed in his deposition were either read to him or were read by him quite slowly, which prevented RTIC from reaching all of the co-designated topics at that deposition. RTIC maintain that YETI failed to disclose the dyslexia prior to the deposition and refused to allow additional time to depose that witness, and that when RTIC deposed another co-designee (YETI National Sales Manager Will Morgan) on some of Maynard's topics, Morgan was not prepared to testify on many of them.  RTIC thus requests seven additional hours for deposing Maynard.

YETI contends that RTIC mismanaged their time in deposing Maynard, and could have covered everything had counsel done a better job and not wasted time on background questions. Also, YETI argues that Maynard was prepared to testify on all the topics for which he was designated. For the reasons stated on the record at the heairng, the Court will **GRANT** RTIC's Motion to Compel (Dkt. No. 161), and permit RTIC and additional 3.5 hours to complete the Maynard deposition.

**4.    Wittenbraker and Bullock's motion to quash subpoenas (Dkt. No. 163)**

These third parties were served with subpoena notices in the last week of November for depositions on December 6, 2016, the last day of discovery. Wittenbraker is YETI's former Vice President of marketing and Bullock is YETI's former Chief Financial Officer. Wittenbraker and Bullock move to quash the depositions based on a lack of reasonable notice. RTIC asserts that these deponents are highly relevant as several of YETI's corporate representatives or current employees lacked knowledge of facts known only by their predecessors. RTIC further contends that the notice was sufficient. As stated on the record, RTIC waited far too long to take depositions from these non-parties, and thus the Court will therefore **GRANT** the non-parties' motion to quash (Dkt. No. 163).

**5.    YETI'S Motion to Compel and Motion for Contempt and Sanctions (Dkt. No. 168)**

In this motion, YETI seeks compliance with a previous order of this Court requiring RTIC to produce certain audio files. *See* Dkt. No. 151. YETI complains that RTIC has still not produced the audio files, and moves for sanctions. It requests that: (1) RTIC be required to produce the files and pay half of the costs of transcribing the recordings; (2) the Court permit depositions regarding the audio files, (3) the Court impose sanctions including the costs of filing the motion to compel and

in connection with taking depositions as a result of the delayed production; and (4) should YETI prevail at trial, declare this case an "exceptional" case due to RTIC's misconduct.

RTIC explained at the hearing that after the prior hearing it learned it could not export the audio files in bulk as it thought, but would have to do so one by one. RTIC offered to provide YETI direct access to the ZenDesk database or to allow YETI to set up a vendor to access the ZenDesk database, so that it could access all of the files directly through that software. RTIC asserts it has been diligent and tried in good faith to comply with the Court's Order and that therefore sanctions are inappropriate.

The portion of this issue that is time sensitive is the production to YETI of the audio recordings. Thus, as stated at the hearing, the Court **ORDERS** that RTIC work with YETI to accomplish the download and production of the audio files as quickly and efficiently as possible, which includes RTIC giving ZenDesk permission to assist YETI directly in downloading the files. The Court reiterates its prior Order than any transcript that is created by YETI must be produced to Defendants within the applicable time period and YETI has represented to the Court that it will share the bulk download with Defendants. The Court will re-visit the issue of costs and sanctions after trial. It shall be YETI's responsibility to raise those issues with the undersigned through an advisory to the court. In short, YETI'S Second Motion to Compel (Dkt. No. 168) is **GRANTED IN PART,** and the request for sanctions and costs is **TAKEN UNDER ADVISEMENT**.

6. **YETI'S motion to continue the deposition of John Jacobsen (Dkt. No. 172)**

In this motion, YETI seeks additional time to depose John Jacobsen on late produced cooler samples. YETI had requested in discovery any cooler samples RTIC considered in designing its coolers, and only well into the deposition of the Jacobsens did RTIC disclose that it had recently

discovered one such cooler, and then, two weeks after the depositions it located two additional coolers. YETI thus seeks time to question John Jacobsen about these samples. RTIC responds that YETI has already deposed James Jacobsen on this issue on December 2, 2016, after it inspected the cooler samples on November 28, 2016. RTIC argues that the only question Jim Jacobsen could not answer was how RTIC came into possession of the coolers during the litigation, and John Jacobson should not have to make himself available for questioning because YETI has refused to make its 30(b)(6) deponents available for additional depositions. As stated at the hearing, RTIC's very tardy supplementation of its production is RTIC's fault alone, and it must permit questioning on the late-produced sample coolers. Accordingly, the Court **GRANTS** YETI'S motion to compel (Dkt. No. 172), and YETI is permitted to depose John Jacobsen for one additional hour on the topic of the cooler samples disclosed by RTIC.

7.     **RTIC's motion to continue the deposition Dr. Richard Crawford (Dkt No. 178)**

RTIC requests additional time to depose YETI's expert Dr. Richard Crawford. RTIC asserts that he submitted three separate reports on three issues and RTIC did not have time to cover all of those issues in seven hours. RTIC further complain that the circumstances make this unfair, as it designated three experts on the three issues, allowing YETI 21 hours of depositions on the same topics. RTIC also requests that Dr. Crawford be required to produce the intermediate CAD drawings, computer models, and underlying data he used in preparing his report in advance of the additional deposition.

YETI responds that RTIC wasted several hours of the Crawford deposition with irrelevant questions on issues that had already been resolved, and that RTIC had been free to designate a single expert on these issues as well, so there is no unfairness in the situation. YETI further states that while

it does not believe the intermediate models are relevant or discoverable, it either has, or will provide those to RTIC.

Having considered the issue, the Court **GRANTS** RTIC's Motion to Compel the Continuation of the Deposition of YETI Expert Witness Dr. Richard Crawford (Dkt No. 178) and will permit RTIC and an additional 3.5 hours of time to complete the deposition of Dr. Crawford.

## SUMMARY OF RULINGS

Third-Party Denise Marie Martin's Motion to Quash (Dkt. No. 154) is **DENIED AS MOOT**. YETI's Motion to Compel (Dkt. No. 157) is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to the opinions of RTIC's counsel and the sufficiency of RTIC's privilege log, but **GRANTED** as to the deposition of James Jacobsen. Defendants' Motion to Compel the Continuation of the Deposition of Corey Maynard (Dkt. No. 161) is **GRANTED** and RTIC may depose him for 3.5 additional hours. The Opposed Joint Motion to Quash Non-Party Subpoenas (Dkt. No. 163) is **GRANTED**. YETI's Second Motion to Compel and Motion for Contempt and Sanctions (Dkt. No. 168) is **GRANTED IN PART,** and the request for sanctions and costs is **TAKEN UNDER ADVISEMENT**. YETI's Motion to Continue the Deposition of John Jacobsen (Dkt. No. 172) is **GRANTED**. Finally, Defendants' Motion to Compel the Continuation of the Deposition of Dr. Richard Crawford (Dkt. No. 178) is **GRANTED** and RTIC may depose him for 3.5 additional hours.

SIGNED this 30th day of December, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE