IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **YETI COOLERS, LLC,** | § | |
| | § | |
| **V.** | § | A-15-CV-597-RP |
| | § | |
| **RTIC COOLERS, LLC, et al.** | § | |

## ORDER

Before the Court are four related motions, seeking to exclude four "outdoors experts" designated by YETI: Joe Martino (Dkt. No. 183); Kirk D. Deeter (Dkt. No. 199); Dan Nelson (Dkt. No. 205); and Jim Draper (Dkt. No. 206). Each of the designated individuals is occupied in some fashion in the world of hunting and fishing. Martino is an outdoor writer, speaker and hunting guide. Deeter is the Vice President and Editor-in-Chief of the Trout Media Group of Trout Unlimited and a contributing editor for Field & Steam magazine, and writes about fishing. Nelson and Draper are freelance writers and photographers who write for leading hunting and fishing publications. YETI has designated each of them as experts to testify regarding "(1) the popularity and success of YETI's coolers, and (2) the public's perceptions of YETI's coolers." Dkt. No. 279 at 2.

RTIC argues that the four witnesses "applied no methodology whatsoever, and instead merely reference anecdotes and speculative personal, lay opinions to support their otherwise unfounded legal conclusions that YETI's asserted trade dress is famous and has acquired secondary meaning." Dkt. No. 183 at 2. The Court agrees. Though there is no doubt that each of the proposed witnesses spends a great deal of time interacting with hunters and fishermen, and, as a result, come into regular contact with YETI's coolers, this is not sufficient to permit them to offer opinions in court regarding the general consuming public's view of YETI's coolers. None of the experts have relied on any data or other identifiable evidence to support their opinions. Instead, they rely solely on the fact that they

talk to and interact with hunters and fisherman frequently, and follow that "industry" as part of their business. Despite this, YETI proposes to have them testify to such things as:

> In my experience in covering the outdoor product industry and interacting with others in the industry, people in the industry can determine that a Tundra® and Roadie® cooler is a YETI just by viewing the overall design and of the coolers. In my experience and expertise, the overall design and appearance of the Tundra® and Roadie® coolers are unique. When individuals in the hunting industry see overall design and appearance of those coolers, they think of one company, and that company is YETI.

Dkt. No. 183-2 at 7 (report of Martino). As is clear from Martino's deposition, he does not base this opinion on any data, surveys, or other empirical evidence. It is simply what he thinks and what he has heard others say, based on his experience as an outdoor writer, speaker and hunting guide. And though he may be correct, opinion evidence that is based solely on anecdotal evidence and conversations is not admissible as expert testimony.

      YETI contends that it is not relevant that these outdoorsmen do not have advanced degrees in marketing or psychology, as one can be an expert based on experience alone. While YETI is right on that point, these witnesses' experience is in hunting and fishing, which only qualifies them to opine on topics such as the quality of fly rods, which shotgun is the best, or the premium location for hunting deer with a bow. It does not qualify them as experts on whether a product is "famous" for trade dress purposes, whether the general consuming public recognizes a product as iconic, or whether a product's appearance has obtained secondary meaning; or at least it does not qualify them to offer those opinions without gathering evidence to support it through a process recognized as accurate and accepted (*e.g.,* a double blind survey of a scientifically significant sample of consumers). As one district court put it recently, "[t]he expertise most germane to [determining secondary meaning] involves training or experience in performing empirical analyses. But as to this

2

critical qualification, [the expert's] credentials are woefully deficient." *LVL XIII Brands, Inc. v. Malletier*, 2016 WL 4784004 at *12 (S.D.N.Y. Sept. 13, 2016). The same is the case here.

      YETI responds to this flaw by arguing that the experts are not testifying regarding secondary meaning or fame. Instead, they are only testifying that YETI's coolers are popular, and how the public perceives the coolers. There are two problems with this. First, YETI fails to demonstrate the relevance of the testimony if it does not pertain to the fame or secondary meaning of the mark. To prove its claim, YETI does not have to demonstrate that its coolers are "popular," or to have lay testimony about how consumers perceive its coolers. It has to prove that its trade dress is meaningful to the consuming public—that the public recognizes YETI's trade dress, and *that* is why its coolers are popular. If the testimony does not address these issues, then it is irrelevant. Second, YETI's claim about the purpose of the testimony amounts to spin. As RTIC notes in its reply, "YETI is proffering [the four] as experts and their opinions track the legal definitions of" "fame" and "iconic." Dkt. No. 311 at 4. YETI cannot do an "end-around" to avoid the legal requirements of an expert on these topics by claiming that the four are doing something other than what they actually are doing.

      In its response, YETI makes an alternative argument that in the event the four are prevented from testifying as experts, then the Court should permit them "to offer testimony and opinions as lay witnesses based upon their personal knowledge and perceptions under Rules 602 and 701." Dkt. No. 279 at 10. RTIC opposes this request as well, arguing that the testimony is not relevant, as it is limited to the specific industry they work in, and, moreover, is based purely on hearsay. YETI's alternative argument fails, for much the same reason that its original argument did. As RTIC points out, the relevant issue here is the *perception* of consumers. The only way to gauge this is by gathering information from the general consuming public in a scientific way that allows one to make

reasonable conclusions regarding consumers' thoughts about a product. Simply spending a great deal of time interacting with users of a product is not a substitute for empirical data. If it were, then every trademark case would be supportable merely by lay witnesses—users of the contested product or people who interact with them. Because the proposed lay testimony would not be based on reliable data, it would be irrelevant, and should not be permitted.

ACCORDINGLY, all four of RTIC's motions (Dkt. Nos. 183, 199, 205 and 206) are **GRANTED**.

SIGNED this 27th day of January, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE