**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

YETI COOLERS, LLC,                 §
                                   §
V.                                 §          A-15-CV-597-RP
                                   §
RTIC COOLERS, LLC, et al.          §

## ORDER

Before the Court is YETI's Opposed *Daubert* Motion to Exclude the Report and Opinion Testimony of Peter Golder (Dkt. No. 227); RTIC's response Dkt. No. (No. 274); and YETI's reply (Dkt. No. 321). The motion was referred to the undersigned for resolution.[1]

Peter Golder is a Professor of Marketing at the Tuck School of Business at Dartmouth College in Hanover, New Hampshire. He is the coordinator of the Tuck School's marketing faculty group and co-Editor-in-Chief of the academic journal, *Marketing Letters*. He was formerly a Professor of Marketing and was Coordinator of the Marketing Department Doctoral Program at the Stern School of Business at New York University. He has a Ph.D. in Business Administration (Marketing) from the University of Southern California and a B.S. in Mechanical Engineering from the University of Pennsylvania. RTIC has designated Golder to testify on the issue of whether YETI's trade dress has acquired secondary meaning, and to rebut the testimony of YETI's experts Jerry Wind and Wayne Hoyer.

---

[1] These is one of 16 motions the parties have filed challenging their opponent's experts under *Daubert* and FED. R. EVID. 702. Because the standard applicable to the review of this type of motion is well-known, and to avoid repeating itself over and over in these orders, the Court will not set out here the black letter law governing such motions. Suffice it to say the Court did in fact apply the standard set out in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and its progeny, as codified in Rule 702.

YETI contends that Golder applied incorrect legal standards in examining the secondary meaning issue because he completely ignored two factors Fifth Circuit case law requires be examined. YETI further contends that Golder's methodology has not been recognized by other courts, and he has only utilized it once before. Finally, YETI argues Golder failed to consider data concerning YETI's sales and advertising expenditures, and this makes his conclusions unreliable. RTIC responds that Golder did in fact consider all of the relevant factors, and his approach is reliable and conforms with Fifth Circuit law. It argues that a secondary meaning expert is not required to opine on every factor courts find relevant in determining secondary meaning for his opinion to be reliable, and submits that there is no requirement that an expert's exact analytical framework have been applied or accepted by other courts to be admissible. Finally, RTIC notes that Golder analyzed the reports of YETI experts Wind and Hoyer, which included YETI's sales numbers and advertising expenditures, and thus YETI is incorrect in its assertion that Golder failed to consider that data.

## I.      Trade Dress - Basic Principles

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citations omitted). "The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Id.* (citations omitted). To determine whether a trade dress has "secondary meaning," courts inquire into "the public's mental association between the mark and the alleged mark holder" to determine whether "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the

product itself." *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008) (citing *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000). "[T]he showing required is that consumers associate the trade dress with a single source, even if the name of that source is unknown." 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:8 (citation and internal quotation marks omitted). *See also, Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 n. 8 (5th Cir. 1999). Courts in the Fifth Circuit consider a combination of seven factors in determining the existence of secondary meaning:

> (1) length and manner of use of the mark or trade dress,
> (2) volume of sales,
> (3) amount and manner of advertising,
> (4) nature of use of the mark or trade dress in newspapers and magazines,
> (5) consumer-survey evidence,
> (6) direct consumer testimony, and
> (7) the defendant's intent in copying the trade dress.

*Smack Apparel*, 550 F.3d at 476. In combination, these factors may show that consumers consider a mark to be an indicator of source, even if each factor alone would not prove secondary meaning. *Id.* Whether a mark has acquired secondary meaning is a question of fact. *Amazing Spaces*, 608 F.3d at 234.

## II.    Failure to Apply Fifth Circuit Factors

YETI asserts that Golder's expert report and testimony are inadmissible because he based his opinion on marketing principles and literature, rather than Fifth Circuit precedent. YETI claims that Golder's analysis completely failed to address two of the factors the Fifth Circuit has identified as relevant to this analysis: (1) consumer survey evidence; and (2) evidence of the infringer's intent to copy the trade dress. YETI's argument is based on the assumption that Golder was required to consider ***all*** the factors set forth in *Smack Apparel*, in making his report. However, YETI cites to

no cases standing for this proposition.  Instead, it cites to various cases standing for the proposition that this type of evidence is relevant to a determination of secondary meaning. *See Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 253-54 (5th Cir. 1997) (overruled on other grounds); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983) (abrogated on other grounds); *Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex. 2005).  These cases do not stand for the proposition that failure to consider all seven factors renders an expert opinion unreliable.  For example, in *Sunbeam*, the court stated that "we have recognized that consumer surveys are not the only evidence relevant to the determination of secondary meaning."  123 F.3d at 254.  And in *Zatarains*, that court said that "while none of these factors alone will prove secondary meaning, in combination they ***may*** establish the necessary link in the minds of consumers between a product and its source."  698 F.2d at 795 (emphasis added).  Finally, the court in *Berg* noted that "courts also recognize that evidence of a defendant's intent to copy is more relevant to the infringement analysis than the protection analysis."  393 F.Supp. 2d at 554.  Golder's failure to consider survey evidence or evidence of intent does not render his opinion on secondary meaning unreliable.  Rather, it goes to the weight the jury chooses to give his opinion, and is a topic on which YETI may cross-examine him.[2]

### III.    Golder's Analytical Framework

YETI next argues that Golder's opinions are unreliable because he has only used his analytical framework once before, in an ITC case. Additionally, YETI relies on Golder's testimony that he was unaware of any other individuals or courts who have applied or accepted the framework

---

[2]YETI's reliance on *Oralabs, Inc. v. Kind Grp. LLC*, 2015 WL 4694138, at *8 (D. Colo. Aug. 7, 2015) is misplaced.  Unlike the expert in that case, Golder did not apply a defunct legal standard.

he employed in drafting his opinion, as establishing that his methodology is unreliable.  In *Daubert*, the Supreme Court set out a list of non-exclusive factors that the Court may consider in determining whether an expert's methodology is reliable, which include the testability of the expert's approach, whether it is peer-reviewed, whether an error rate has been or can be identified for it, and whether it is generally accepted by the relevant academic community.  *Daubert*, 509 U.S. at 592-94.  How the *Daubert* factors apply in a particular case depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150.  But the *Daubert* factors only apply "where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.  Here, the *Daubert* reliability factors are of little help.  Golder is a marketing expert who relied upon marketing and other literature in forming his opinion. Dkt. No. 215-5.  Most of the *Daubert* factors used in evaluating the reliability of his methodolgy are inapplicable. "'[T]echnical . . . or other specialized knowledge,' may be relevant and reliable, and therefore admissible under *Daubert*, even if the field of knowledge, be it marketing or plumbing, does not readily lend itself to a formal or quantitative methodology." *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 364–65 (S.D. N.Y. 2014) (quoting FED. R. EVID. 702).  *See also, Clinchfield R. Co. v. Lynch*, 784 F.2d 545, 554 (4th Cir. 1986).

In such a case, a court looks to whether there is a sufficiently rigorous analytical connection between the expert's methodology and his conclusions.  *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).  The Court finds that there is a sufficient connection here.  The situation is like that discussed by a New York district court:

> Although expert testimony should be excluded if it is speculative or conjectural, or
> if it is based on assumptions that are so unrealistic and contradictory as to suggest
> bad faith, or to be in essence an apples and oranges comparison, other contentionsthat

the assumptions are unfounded go to the weight, not the admissibility, of the testimony.

*Bacardi & Co. v. N.Y. Lighter Co., Inc.*, 2000 WL 298915, at *2 (E.D. N.Y. Mar. 15, 2000). YETI's concerns about Golder's opinion testimony are best tested by "[v]igorous cross-examination [and] presentation of contrary evidence," *Daubert*, 509 U.S. at 596, and do not merit exclusion of his testimony.

## IV.   Failure to Consider YETI's Sales and Advertising Expenditures

YETI's last argument is that Golder's opinions are unreliable because he failed to consider data concerning YETI's sales and advertising expenditures—two of the elements the Fifth Circuit identifies as relevant to a secondary meaning analysis. *See Smack Apparel*, 550 F.3d at 476. YETI also asserts that while Golder claimed in his deposition that he considered YETI's volume of sales and advertising  expenditures as discussed by Wind and Hoyer in their expert reports, he failed to discuss those numbers in his own report.  YETI argues that the silence of his report on this topic makes his contrary claim in his deposition incredible, which in turn undermines the reliability of his opinion. RTIC responds that Golder did consider YETI's advertising expenditures in his analysis, but discounted them, because he found that YETI's advertising undermined any establishment of secondary meaning. Dkt. No. 215-5 at 11.  RTIC asserts that there is limited empirical value in focusing on advertising expenditures in establishing secondary meaning and Golder's approach is consistent with this concept.  *See Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 371 (E.D. N.Y. 2007); *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 662 (7th Cir. 1995).  With regard to sales figures, RTIC maintains that Golder found that any purported success of YETI's products was not a result of marketing trade dress; but rather, was the result of

a focus on the YETI name, and is thus outside the scope of secondary meaning. Dkt. No. 258-4 at 91-92. *See Bern Unlimited, Inc. v. Burton Corp.*, 95 F. Supp. 3d 184, 209 (D. Mass. 2015).

YETI argues that Golder's failure to consider the evidence of advertising expenditures and sales undermines the reliability of his report and testimony because he essentially "cherry picked" only the information that supported his conclusion, relying on *LeClercq v. The Lockformer Co.*, No. 00 C 7164, 2005 WL 1162979, at *4 (N.D. Ill. Apr. 28, 2005). However, in *LeClercq*, the court excluded the expert's opinion where he could not explain why he excluded data that clearly contradicted his opinion. That is not the case here. Golder has offered reasons for excluding the sales and advertising expenditures data. *See, e.g., Hannah's Boutique, Inc. v. Surdej*, 2015 WL 3856551, *10 (N.D. Ill. June 19, 2015) (distinguishing *LeClercq* on this basis). The Court's role is not "to decide whether an expert's opinion is correct," but is "limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). Golder's testimony passes this test.

IT IS THEREFORE ORDERED that YETI's Opposed *Daubert* Motion to Exclude the Report and Opinion Testimony of Peter Golder (Dkt. No. 227) is **DENIED**.

SIGNED this 28th day of January, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE