IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **YETI COOLERS, LLC,** § | |
| § | |
| V. § | A-15-CV-597-RP |
| § | |
| **RTIC COOLERS, LLC, et al.** § | |

## ORDER

Before the Court is Defendants' Motion to Exclude the Testimony of YETI's Expert Wayne Hoyer (Dkt. No. 208); YETI's response (Dkt. No. 270); and RTIC's reply (Dkt. No. 312). The motion was referred to the undersigned for resolution.[1]

Wayne Hoyer is the James L. Bayless/William S. Farish Fund Chair for Free Enterprise and the Chairman of the Department of Marketing in the McCombs School of Business at the University of Texas at Austin, where he has taught for 30 years. He received his Ph.D. in Social-Consumer Psychology from Purdue University in 1980. YETI has designated Hoyer to testify as an expert on the fame of YETI's trade dress for its hard-sided coolers, the importance of YETI's brand awareness to its competitive position in the market, and the dilution, if any, and marketing-related harm YETI may have suffered as a result of RTIC's accused actions. RTIC moves to exclude Hoyer's testimony because it contends he fails to distinguish YETI's trade dress from its brand, he fails to apply the correct standard for fame, he opines on matters that the jury can decide for itself, he relies on unreliable second hand studies, and he offers improper legal conclusions.

---

[1] These is one of 16 motions the parties have filed challenging their opponent's experts under *Daubert* and FED. R. EVID. 702. Because the standard applicable to the review of this type of motion is well-known, and to avoid repeating itself over and over in these orders, the Court will not set out here the black letter law governing such motions. Suffice it to say the Court did in fact apply the standard set out in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and its progeny, as codified in Rule 702.

I.  **Distinguishing Trade Dress from Brand**

RTIC contends that Hoyer's testimony regarding fame is unreliable because his analysis of the marketing and advertising efforts conflated YETI's trade dress and brand. It argues that Hoyer's testimony fails to tie his opinions specifically to trade dress because he considers evidence of the brand as a whole. YETI disagrees, noting that much of Hoyer's evidence used to support his conclusions directly addresses the trade dress. Additionally, YETI argues that RTIC's argument is untenable in that the trade dress nearly always appears with other potential source identifying information. Finally, YETI argues that in a fame analysis under the Lanham Act, there is no need to distinguish between brand and trade dress.

First, the Court will not address YETI's argument that the Lanham Act does not require a distinction between the trade dress and the brand. This legal argument is better suited to a summary judgment motion. Moreover, it is unnecessary as the Court agrees with YETI that an expert is not required to solely consider materials that distinguish between the trade dress and brand.[2] While at least some of the marketing materials almost certainly were not aimed at YETI's trade dress, this is not a ground to exclude his entire report. *See Sally Beauty Supply Co. v. Beautyco, Inc.*, 304 F.3d 964, 974, 980 (10th Cir. 2002) (considering a survey in which the trade dress and trademark were not separated, and finding evidence of actual confusion of the trade dress). In fact, in each of the

---

[2] At one point, RTIC argues that Hoyer "is not aware of *any* YETI advertisements that displayed the cooler without using the name "YETI". Dkt. No. 208 at 3. Courts do not require that the trade dress be advertised without any other brand identifying information. *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1559 (S.D. Tex. 1996) ("Advertisements that emphasize the relevant trade dress may solidify in the minds of consumers an association between the advertised trade dress and the source of the trade dress."). Rather, as in *Pebble Beach*, the advertisements should help to form an association between the source and the protected trade dress. Thus, the fact that Hoyer could not identify any advertisements that did not include the logo does not make his testimony unreliable. In fact, this is to be expected.

cases Defendants cite that address marketing and advertising, the courts are assessing whether the evidence provided is sufficient to establish the ultimate issue, and were not addressing a *Daubert* challenge. *See Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 44 (1st Cir. 2001); *Sally Beauty Supply Co.*, 304 F.3d at 974; *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1559 (S.D. Tex. 1996). Moreover, Hoyer addresses the features of trade dress that YETI is attempting to protect; in his report, he analyzes multiple images of YETI's marketing and advertising featuring the trade dress to support his conclusions. The fact that not all of the materials he used, such as the advertising expenditures, address only trade dress goes to the weight of his testimony.

Similarly, RTIC's argument that Hoyer did not analyze the advertising for each element of YETI's trade dress would bear on the weight to give Hoyer's testimony, not its reliability. RTIC relies on *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 180 (S.D.N.Y. 2012) to support their position. In that case, the court excluded a survey because the expert merely "chose a control that shared 'certain characteristics' with the test product," and it was unclear to which of the elements the consumers were expressing source confusion. *Id.* However, Hoyer did not conduct a survey. Instead, he was analyzing advertising materials provided to him to assess whether YETI featured its trade dress and the impact of this on YETI's fame. The fact that Hoyer analyzed trade dress as a whole goes to the weight of his testimony, and is better addressed through effective cross-examination.

**II.     Correct Legal Standard for Fame**

RTIC next argues that Hoyer's testimony is unreliable because he applied the incorrect legal standard for "fame" in trade dress. To establish that a mark (or in this case trade dress) is famous, the party must show that the mark is "widely recognized by the general consuming public of the

United States." 15 U.S.C. § 1125(c)(2)(A).  Under the Trademark Dilution Act of 2006 (TDRA), there are four non-exclusive factors to determine if a mark is famous:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark;
(iii) The extent of actual recognition of the mark;
(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c). Moreover, the mark has to be recognized by the general public, and a party cannot establish fame in a "niche market." *Bd. of Regents, Univ. of Tex. System ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678-79 (W.D. Tex. 2008). Both RTIC and YETI agree that this law governs the fame analysis. In fact, RTIC does not argue that Hoyer applied a different standard; rather, it argues that Hoyer "failed to apply the correct legal standard—or, indeed, any standard at all—regarding the threshold at which a product becomes sufficiently 'famous.'" Dkt. No. 208 at 4.

RTIC contends that there is a "very high threshold" to establish fame, and that Hoyer failed to apply this threshold to his analysis. It cites several cases, which all set a threshold of around seventy (70) percent recognition to establish fame. *See* Dkt. No. 312 at 3, citing *7-Eleven Inc. v. Lawrence I. Wechsler*, 83 U.S.P.Q. 2d 1715, *14 (T.T.A.B. 2007) (finding the mark famous with 73% recognition); *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-CV-00133, 2010 WL 5395065, *5 (D. Utah Dec. 27, 2010) (71% recognition); *see also Univ. of Tex.*, 550 F. Supp. 2d at 679 (requiring the mark to be a "household name" to offer protection as a famous mark). According to RTIC, because Hoyer did not apply this threshold in his analysis, he applied an incorrect legal standard. YETI disagrees. First, it argues that Hoyer applied the four factors listed above, finding

4

both national and regional fame, and did not merely assess fame with regard to a "niche market." Additionally, YETI contends that the standard set forth by Defendants—even if correct (which YETI disputes)—is a factual determination of the third factor of the Lanham Act, rather than a legal standard that must be applied by the expert. As such, Hoyer's testimony should not be excluded on the basis that he did not address whether YETI's trade dress met the threshold.

Courts will exclude expert testimony when it relies on an incorrect legal standard. *See e.g.*, *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 745 (N.D. Ill. 2009); *Noskowiak v. Bobst SA*, No. 04-C-0642, 2005 WL 2146073, *5 (E.D. Wis. Sept. 2, 2005). However, in cases such as this one, where the law is not clearly defined on this point, it would be improper to exclude Hoyer's testimony. *See In re Se. Milk Antitrust Litig.*, 2010 WL 5102974, *2 (E.D. Tenn. Dec. 8, 2010) (finding that "it would be inappropriate to determine the correct 'legal standard'"). Both YETI and RTIC have presented different thresholds of recognition for determining at what point a mark is famous. This issue is not yet clearly defined, and is inappropriate for decision in a *Daubert* motion. In fact, this exact issue appears to be before the Court in the parties' motions for summary judgment.

Moreover, it is not clear that the threshold is a legal standard, or a factual determination as part of the fact finders' duty to apply the four factors set out in the Lanham Act. As such, whether Hoyer set a specific threshold to determine fame does not go to the reliability of his testimony, but is better suited for cross-examination. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, No. 5:02-571, 2007 WL 7083655, *18 (E.D. Ky. May 12, 2007) ("Whether he correctly uses this test is a matter of weight and not admissibility."). In fact, RTIC's argument on this point seems to address the merits of Hoyer's conclusions, rather than the reliability of his testimony. *See* Dkt. No.

5

312 (arguing that "none of [Hoyer's] evidence comes close to showing that YETI's brand . . . has achieved 'household name' status"); *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, No. A-CV-022748, 2005 WL 6042721, *2 (E.D.N.Y. Jan. 19, 2005) (finding that the balance of the motion went to the merits, not the reliability, of the expert's report). Neither party disputes that Hoyer applied the four factors set forth in the Lanham Act. Whether his factual determinations are correct is for the fact finder to decide. Similarly, Hoyer employed the analysis for fame with respect to the national,[3] not merely niche, market. RTIC argues that he considers evidence from the niche market, and thus his testimony is unreliable. However, Hoyer cited to the correct legal standard. Moreover, he considered evidence of both national and niche fame. The extent of his consideration of the niche market evidence would go to the weight of his testimony, rather than its admissibility, and may be addressed by cross-examination.

### III. Matters for the Jury

RTIC also contends that Hoyer's testimony on the similarity of the products and intent to copy should be excluded because his testimony involves determinations that the fact finder may make for itself. It argues that neither of these topics require special expertise. YETI responds that the fact finder would be assisted in its similarity analysis by Hoyer as he is better able to point out specific details to the jurors, and his experience and knowledge can assist the jury in understanding the significance of the documents reflecting an intent to copy.

As the Court noted in a recent order on these motions, this is an issue within the court's discretion. *See* Order related to Prof. J. Wind, citing *Betterbox Comm'ns Ltd. v. BB Techs., Inc.*, 300

---

[3] It is unclear if Defendants are challenging Hoyer's consideration of regional evidence of fame. However, Hoyer was permitted to address YETI's regional fame, as YETI is also suing under Texas state trademark laws.

F.3d 325, 329-30 (3d Cir. 2002); and *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 571-72 (S.D.N.Y. 2007). Here, Hoyer is testifying to a number of factors of both fame and dilution. These topics dovetail with his other testimony, and it is appropriate for him to discuss these topics along side his other opinions.

## IV.     Secondhand Studies

RTIC contends that some of the experts that Hoyer relied on conflated YETI's trade dress and brand, thereby making Hoyer's opinion unreliable. RTIC also notes that Hoyer relied on studies performed by other YETI experts, which are currently being challenged, which makes Hoyer's testimony unreliable. *See* Dkt. No. 208 at 10 (Hoyer stating he relied on reports by Cunningham, Deeter, Draper, Kamins, Martino, Nelson, Salters, and Wind). Lastly, Defendants argue that Hoyer relied on declarations obtained by YETI counsel, secondhand reports from "advocates," and YETI experts Deeter, Draper, Martino, and Nelson (which Defendants independently seek to exclude) , undermining his conclusions. YETI responds that even if the other experts are excluded, this does not render Hoyer's testimony unreliable.

First, as discussed above, Hoyer's opinion is not unreliable for relying on evidence of all marketing, rather than marketing which solely emphasizes trade dress. The fact that he relied on another expert who RTIC challenges on the same basis would therefore not render his opinion unreliable. These arguments go to the weight of his testimony. RTIC also argues that Hoyer relied on surveys and studies performed by other challenged experts, and thus if their studies are excluded, Hoyer's testimony should be as well. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420,422 (5th Cir.

7

1987). More to the point, with the exception of the four outdoors experts (discussed below), this objection is moot, as the Court has denied RTIC's motions to exclude the experts on whose reports Hoyer has relied. And even if some of those reports had been excluded, this would not make his testimony *per se* unreliable. *See Lithuanian Commerce Corp. v. Sarah Lee Hosiery*, 202 F. Supp. 2d 371, 377 (D.N.J. 2002) (allowing testimony of an expert even though he had relied on expert reports that were later excluded). Instead, it would go to the weight of his testimony.

Lastly, Defendants argues that Hoyer relied on marketing evidence provided to him by YETI, secondhand reports of interviews with advocates, and the testimony from the four outdoorsmen (YETI experts Deeter, Draper, Martino, and Nelson). Defendants contend that the statements and marketing studies provided by YETI are unreliable, and thus render Hoyer's testimony unreliable. However, reliance on even "unverified or inaccurate information" provided by a client does not render an expert's testimony "*per se* unreliable." *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013). As already noted, there is a great deal of material underlying Hoyer's opinions, most of which has already been deemed admissible, and thus the fact that he considered some evidence that is not itself admissible is not a ground for excluding Hoyer's testimony. It is instead a subject for cross-examination, if RTIC chooses. The reports of Deeter, Draper, Martino, and Nelson, who have been excluded by the Court as experts, fall into this same category. Hoyer's reliance on them does not disqualify him, and RTIC can challenge the appropriateness of relying on such evidence in cross-examination.

## V.     Improper Legal Conclusions

Lastly, RTIC objects to what it contends are legal conclusions in Hoyer's expert report, including: YETI "satisfies the criteria for being classified as a famous brand;" and "RTIC's actions

have created a dilutive effect on YETI's brand by blurring the association with the premium mark." YETI responds that the statements are not improper legal conclusions, but merely embrace an ultimate issue, and, according to YETI, are not that different from many made by RTIC's experts. *See* Dkt. No. 270 at 9. Though an expert may not offer legal conclusions, an expert opinion "is not objectionable just because it embraces an ultimate issue" decided by the fact finder. FED. R. EVID. 704(a). In cases where an expert may provide testimony that involves a legal conclusion, the decision to exclude will rest on whether the testimony is helpful to the jury in resolving any factual issues. *J.S. v. American Institute for Foreign Study, Inc.*, 2013 WL 5372531, *12 (W.D. Tex. Sep. 24, 2013). That is a decision best made by the trial judge, at trial. RTIC has able counsel who can object to any legal conclusions Hoyer attempts to offer that it believes are inadmissible.

ACCORDINGLY, Defendants' Motion to Exclude the Testimony of YETI's Expert Wayne Hoyer (Dkt. No. 208) is **DENIED**.

SIGNED this 28th day of January, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE